## Charles A. Crane v. Maggie Schaefer.

## Gen. No. 13,760.

1. PLEADING—*what pleading of facts as distinguished from stating conclusions of law.* Ultimate facts may be pleaded notwithstanding they, to an extent, represent conclusions.

2. PLEADING—*what statements of conclusions not bad.* It is good pleading to aver the existence at a specified time of a trust deed conveying certain property and securing a particular indebtedness, without setting out such trust deed.

3. DECEIT—*what proof of allegations sufficient in action of.* The allegations made in a declaration in an action of deceit are regarded as divisible and the plaintiff may succeed if he can prove any one of them which of itself makes a cause of action; and the plaintiff may likewise succeed although he may not prove the misrepresentations precisely as laid, nor any of the different forms as alleged. All that is required is proof substantially of the material allegations.

4. DECEIT—*degree of proof required in action of.* In an action of deceit the plaintiff need only prove the material allegations of his declaration by a preponderance of the evidence. People v. Sullivan, 218 Ill. 419, distinguished.

5. DECEIT—*when proof of scienter need not be made.* Proof that the defendant knew that his representations were false at the time he made them need not be made where it appears that the defendant stated a material fact and asserted knowledge thereof upon which the plaintiff relied.

6. VERDICT—*when not disturbed as against the evidence.* Where two jury trials have resulted in the same way the Appellate Court will be slow to set aside a verdict as against the weight of the evidence.

7. MEASURE OF DAMAGES—*instruction as to, in action of deceit, approved.* An instruction on this subject as follows, is approved:

"The court instructs the jury that if you find the issues for the plaintiff, you should assess the plaintiff's damages at such sum, if any, as you may believe from the evidence and under the instructions of the court that the plaintiff necessarily paid in discharge of the encumbrance, if any, shown by the evidence, resting, at the time of the purchase thereof by the plaintiff, upon the lot in question, purchased by her, together with interest upon that amount from the date of such payment at the rate of five per cent. per annum."

8. DAMAGES—*when punitive, may be awarded.* Where malice is, as in an action of deceit, a part of the gist of the action, punitive damages may be awarded even though the act complained of is indictable.

Action in case for deceit. Error to the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed April 20, 1908.

**Statement by the Court.** This is a writ of error sued out from this court to reverse a judgment for $1,200 rendered by the Superior Court of Cook county against the plaintiff in error at the suit of the defendant in error. The case was begun by the issuance of a *capias ad respondendum* against Crane on the affidavit of the plaintiff, Maggie Schaefer, on July 2, 1900. On the same day the plaintiff filed a declaration in one count in case for deceit. The declaration charged that the plaintiff had been induced on September 3, 1896, to enter into negotiations with the defendant for the purchase by the plaintiff of certain real estate which defendant represented was owned by his father, Albert Crane, described as lot 54 in Thomas J. Foster's subdivision, etc., and that said defendant, well knowing that said property was encumbered by a trust deed to Frank R. Chandler, executed by Albert Crane and wife, dated April 1, 1896, etc., conveying said premises and other property in said subdivision, to secure an indebtedness of $1,500, "maliciously, fraudulently and wilfully intending and contriving to cheat, deceive, defraud and injure the plaintiff, falsely, maliciously, deceitfully and fraudulently stated and represented to said plaintiff that he, said defendant, knew all about the title to said lot 54, and that said title was clear and said property unencumbered, and that said Albert

Crane had a good and clear title to said lot 54, free
of all encumbrance." Allegations then followed that,
relying on the defendant's representations, the plaint-
iff agreed to pay $1,050 for the lot, and that she did
so and received from the defendant a warranty deed
executed by Albert Crane and wife, and an abstract
of title, but that the defendant represented to her that
he knew all about the title, and it would be an unneces-
sary expense for her to have the abstract examined,
and that she did not do so, but accepted the deed and
abstract, believing the title to be free and clear of all
encumbrance, as represented by the defendant; that
long afterward the plaintiff discovered the existence
of the trust deed mentioned, and was threatened with
foreclosure; that in order to prevent such foreclosure,
the plaintiff was obliged to and did on May 25, 1900,
"pay to the holder of said encumbrance the sum of
$649, being the proportionate amount of the indebted-
ness secured by said trust deed upon the property
purchased by plaintiff, and obtained a release of said
property from said trust deed;" that Albert Crane was
dead and left no estate, and his widow, who joined in
the warranty, had no property; that the false rep-
resentations of the defendant were material, and if
they had not been made the plaintiff would not have
purchased the property, and that by means of all this
the plaintiff had been damaged to the extent of $1,000.

A count subsequently filed by leave of court, and
known thereafter as the second count of the declara-
tion, repeated the allegations of the first count, and
added thereto the statement that the defendant, a few
days after making the said agreement on, to wit, Sep-
tember 10, 1900, tendered to the plaintiff what pur-
ported to be an abstract of title, representing to the
plaintiff that the same was such abstract of title; that
the abstract so delivered by defendant to plaintiff did
not show the trust deed in question, the last continua-
tion of the abstract having been made just prior to the
recording of said trust deed, and that reliance on the

representations of the defendant prevented the plaintiff from having the title examined.

After a mistrial the plaintiff had leave to amend her declaration and to file an additional count thereto, and on July 1, 1902, she filed the third count to her declaration. It was the same in substance as the other two, except that it omitted all allegations of representations that Albert Crane was the owner of the property. It does, however, allege that the defendant falsely represented to the plaintiff that the defendant knew all about the title to the lot in question, and that said title was clear and said property unencumbered.

Separate demurrers were filed to each of these counts, but they were all overruled and the cause was finally submitted to a jury in January, 1904, on the declaration and subsequent pleadings, the course of which it is not necessary here to detail. The jury found a verdict for the plaintiff for the sum of $773.15.

A motion for a new trial was made by defendant and was granted. The cause came again before a jury in March, 1906. On this trial the jury returned a verdict for $1,200, and answered the following demands for special findings as herein set down:

"Q. 1. Did the plaintiff rely upon any representations by defendant? Answer: Yes.

Q. 2. Do you find the defendant guilty or not guilty on the first count of the plaintiff's declaration filed in this cause on July 1, 1900? Answer: Guilty.

Q. 3. Do you find the defendant guilty or not guilty on the second count of the plaintiff's declaration filed in this cause October 16, 1901? Answer: Guilty.

Q. 4. Do you find the defendant guilty or not guilty on the third count of plaintiff's declaration filed in this cause July 2, 1902? Answer: Guilty."

A motion for a new trial and one in arrest of judgment were after this trial denied. At the same time, on motion of the plaintiff, all papers and proceedings in the cause were amended by increasing the *ad damnum* to $1,200, and judgment was then entered on the verdict. From this judgment the defendant appealed

to this court, and has here assigned twenty-eight errors. Those only relied on in the argument herein filed by the defendant's counsel will be discussed in the following opinion.

WILLIAM SLACK and JOHN C. WILSON, for plaintiff in error.

RAY & PEASE, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The first point urged against the judgment in this case is that the declaration states no cause of action, and that consequently the motion in arrest after verdict should have been granted.

This position is based on the argument—to use the language of the plaintiff in error's brief—"that the existence of those things which constitute a lien at law is one of the indispensable elements of the plaintiff's case," and "a conclusion of law being substituted therefor, there is a complete failure to state a cause of action, and such a pleading cannot be aided by verdict."

Before reciting the particular averments which are in this case claimed by plaintiff in error to be subject to the animadversion of being mere conclusions of law, it may not be out of place to allude to the great difficulty which exists in drawing a line between ultimate facts (which, as distinguished from evidentiary facts, alone are proper to plead) and the pleader's inference from facts, or between such ultimate facts and mixed conclusions of law and fact.

Charles O'Connor, quoted in Andrew Stephen's Pleading, p. 154 (note 4), said: "I think the code contains, as I best recollect at this moment, only one thing which can be called new in principle, and that is an attempt at an absolute impossibility in prescribing the rule of pleading. It declares in substance and

effect that you shall not plead, as in the old system, the conclusions in law or in reason, from the facts of the case, and at the same time it prohibits you from stating or detailing the evidence merely on which you rely.''

That that which is by Mr. O'Connor described as impossible is at least difficult, is recognized by all text-writers and in many decided cases. Judge Mulkey, in Zimmerman v. Willard, 114 Ill. 364, says, speaking of a pleading which said that a deed of assignment mentioned in previous pleadings ''was executed, made, had and contrived by the said Willard of his fraud and covin with the intent and purpose to delay, hinder and defraud his creditors　*　*　* and was utterly void'':

''It is first objected that the replication states a mere conclusion of the pleader and not the facts constituting the fraud, as it should do. This is a misapprehension. While we fully recognize the general rule adverted to by counsel, yet in applying it there is another general rule that must not be lost sight of, namely, that it is not proper to plead mere matters of evidence in any case. It may be difficult in some cases to apply these well-recognized rules of pleading—and this indeed is conceded by the most authoritative text-writers; yet we perceive no difficulty in applying them in the present instance. The fraud relied on here is not, as is generally the case, to be inferred from a great variety of issuable facts to be proven on the trial. It differs from other cases in this respect, however, only in the paucity of the issuable facts from which the fraud is to be inferred. The defense here consists of two facts, namely, the making of the deed, and the alleged illegal or fraudulent intent with which it was done. Both these facts are distinctly averred, and present triable issues, and this is all the law requires.''

The ''ultimate fact'' which must be pleaded is frequently an inference, and conclusion from many evi-

dentiary facts, and is, in a sense, a mixed conclusion of law and fact. The common law system of pleading, despite all the rules against the pleadings of "conclusions of law," often allowed conclusions of law to be pleaded. In some cases hardly anything else was pleaded. Take the common *indebitatus assumpsit* counts, for example, as a basis for recovery, where the promise is implied, and what are they but conclusions of law? While, therefore, it cannot be denied that there is a rule of pleading that mere conclusions of law should not be pleaded, it is a rule that should be applied with liberality, and courts should not be astute to declare these statements mere conclusions of law, which can be instead construed as statements of ultimate as distinguished from evidentiary facts, or at the worst, as mixed conclusions of law and fact.

The statements particularly objected to in the different counts of the declaration in this case, as being mere conclusions of law, are those which declare that there was in existence at the time of the purchase and sale a described trust deed (the parties and date being given) conveying said premises, together with other property in said subdivision, and securing an indebtedness of $1,500, and that said trust deed encumbered said property with a valid and subsisting lien upon said premises for the amount aforesaid. We cannot see why facts are not "distinctly averred" by these allegations, nor why they do not present "triable issues," nor why this is not "all the law requires." Zimmerman v. Willard, *supra*.

The second objection made by the plaintiff in error to the judgment is that the proof does not support the allegations of the declaration. In the first place, it is said that there is no evidence whatever to support material allegations of the declaration, that this is not a question of variance, but of entire absence of proof, and that in consequence the case should

have been taken from the jury by a peremptory instruction.

The ground for this claim, however, which is advanced in argument, is in effect a claim of variance. The plaintiff in error lays stress upon the fact that there was no evidence to prove some of the statements charged, and that such statements concerning the title as were proved differed from those charged.

But the Supreme Court said of an action of deceit: "Such allegations may be regarded as divisible, and the plaintiff may succeed if he can prove any one of them which of itself makes a cause of action. * * * It is also true that the plaintiff might recover although he did not prove the misrepresentations precisely as laid nor in all the different forms as laid, but it was required of him to prove substantially the material allegations." Endsley v. Johns, 120 Ill. 469.

We think that the testimony of the plaintiff and her mother tended to prove "substantially the material allegations," and that the exact language used in the declaration is not proven is not material. The court committed no error in allowing the case to go to the jury.

But it is further insisted that at all events the court erred in not granting a new trial after the verdict; that the decided weight of the evidence was against the plaintiff. It is urged that defendant, who denied the false representations, is *a priori* equally credible with Mrs. Schaefer and Mrs. Rankin, who asserted them, and that the attending circumstances corroborate him.

The testimony was undoubtedly conflicting. Had the jury found the other way, we should not have disturbed its verdict, but we see no justification for doing so as it is. The jury had the witnesses before them; their credibility was considered by them; we cannot properly substitute our judgment for theirs. It is to be noted, too, that this is the second jury

before whom the same witnesses have appeared with the same result.

The verdict is complained of also for the reason that it is too large, even if a liability for some amount should be assumed to exist. This presents the question of the proper rule of damages in a case of this character. An instruction on this subject asked by the plaintiff was given by the court, as follows:

"The court instructs the jury that if you find the issues for the plaintiff, you should assess the plaintiff's damages at such sum, if any, as you may believe from the evidence and under the instructions of the court that the plaintiff necessarily paid in discharge of the encumbrance, if any, shown by the evidence, resting, at the time of the purchase thereof by the plaintiff, upon the lot in question, purchased by her, together with interest upon that amount from the date of such payment at the rate of five per cent. per annum."

This instruction is complained of by plaintiff in error, but we do not think it open to animadversion. It is said that "the true measure of damages is the difference between the value of the lot as it was represented to be and its actual value at the time of the sale," and that this instruction varies from that rule. Neither proposition seems to us exactly correct. In some cases where property is represented to be clear which is in reality encumbered, the literal application of this rule thus formulated would prevent the effect which plaintiff in error asserts the true rule should have—that is, the giving to the plaintiff "the benefit of his bargain." Drew v. Beall, 62 Ill. 164-8. Because he bought cheap on a false representation that the property was unencumbered, should not prevent him from recovering the loss suffered by the misrepresentation. It would do so under the rule mentioned, if the defendant could prove that, even subject to the encumbrance, the property was really worth what was paid for it under the belief that it was unencumbered.

On the other hand, as applied to the facts of this particular case, the proposition laid down by the instruction does not vary from the rule mentioned, or if it does, it so varies to the advantage, and not the disadvantage, of the plaintiff in error. The evidence was, we think, sufficient to make a *prima facie* showing of the value of the lot unencumbered at $1,050, the amount paid for it. It was subject, with other property, to an encumbrance of $1,500, with interest. The plaintiff was restricted in her compensatory recovery to the amount necessarily paid in discharge of the encumbrance, with interest. That amount was $649 and interest—a sum much less than the actual encumbrance resting upon the land, being a proportionate part, instead of the whole of it. That amount, therefore, did measure the difference between "the value of the lot as it was represented to be" (*i. e.*, unencumbered), and "its actual value" (*i. e.*, encumbered as it was) "at the time of the sale."

We think the instruction stated a proper rule of damages, both generally and as including the allowance of interest. 2 Sutherland on Damages, 2d ed., sec. 623; Smith on Fraud, sec. 299; McDowell v. Milroy, 69 Ill. 498; Eames v. Morgan, 37 Ill. 260; Pungs v. American Brake Beam Co., 102 Ill. App. 76.

The jury, however, did not confine themselves to compensatory damages under the rule laid down by the instruction. If they had done so, the verdict could not have been more than eight hundred and forty dollars. It exceeded this by three hundred and sixty dollars. This three hundred and sixty dollars must have been awarded as punitive damages. This award, therefore, raises a question of the further instruction on damages given at the request of the plaintiff, as follows:

"You are instructed that if you believe from the evidence and under the instructions of the court that the defendant made the representations as charged in the declaration, and that the same were false and made

Crane v. Schaefer.

knowingly, wilfully, and maliciously, and that the plaintiff believed and relied upon said representations, and in so doing exercised reasonable prudence under all the circumstances shown by the evidence and under the instructions of the court, and that the plaintiff thereby sustained damages as charged in the declaration, then in fixing the amount of the plaintiff's damages you are not confined to the actual damages shown by the evidence, but may, in your discretion, award and include in your verdict as punitive or exemplary damages, such further sum, if any, as in your judgment is right and proper in view of all the evidence and instructions of the court.''

The claim is made by plaintiff in error that in whatever other cases punitive or exemplary damages may be properly awarded, they cannot be so awarded where the act complained of is one indictable and punishable as a criminal offense at the instance of the people.

We do not think this claim is borne out by the law as declared in Illinois, nor that the instruction is therefore erroneous. Where malice is, as here, a part of the gist of the action, the decisions of our Supreme Court justify punitive damages, even though the act complained of is an indictable one. Eames v. Morgan, 37 Ill. 267; Roth v. Eppy, 80 Ill. 283; Brannon v. Silvernail, 81 Ill. 434; Kelly v. Valentine, 17 Ill. App. 87. We think, under these authorities, the instruction was correct. The question whether the conditions set forth in the instruction existed was for the jury. If punitive damages were properly allowable, the amount of them included in this verdict cannot be considered excessive.

It is claimed by plaintiff in error that the trial court erred in refusing to instruct the jury that the guilt of the defendant in regard to the matters charged in the declaration must be proved to their satisfaction beyond all reasonable doubt before they could find a verdict for the plaintiff. In support of this contention counsel quote the broad proposition made in an opinion of the Supreme Court in a recent case—People v. Sullivan, 218

Ill. 419-437—to the effect: ''That when a criminal offense is charged in the pleadings and must be established either to sustain the cause of action or maintain the defense, the presumption of innocence arises, and the crime charged must be proven by evidence which removes every reasonable doubt of guilt.'' To this statement are cited in The People v. Sullivan, as there are to the same broad proposition in the plaintiff in error's brief, Crandall v. Dawson, 1 Gilman, 556; McConnel v. Delaware Mutual Insurance Co., 18 Ill. 228; Harbison v. Shook, 41 Ill. 141; Sprague v. Dodge, 48 Ill. 142; Germania Fire Insurance Co. v. Klewer, 129 Ill. 599.

These cited cases were nearly all discussed by us in Solomon v. Buechele, 119 Ill. App. 595, the decision of which was made by us some time before the Sullivan case was decided by the Supreme Court; and we there held that they could not be considered authority for so broad a statement as that to which they are cited in the Sullivan case—if that statement is to be taken literally and without limitation. We held that at most the rule that evidence of a criminal offense must in a civil proceeding be proved beyond a reasonable doubt only applied to infamous crimes, and not to such criminal offenses as assault and battery. Although the criminal offense of obtaining money under false pretenses is not a felony under our Criminal Code, it may perhaps be considered an infamous crime. This is doubtful, however, and in view of the opinion of the Supreme Court in Eames v. Morgan, 37 Ill. 260, where the question seems passed on by the approval of one of the instructions objected to, we should have no hesitation, were it not for the expressions before quoted from the Sullivan case, in holding that the rules of evidence governing such cases as the present did not require more than a preponderance of evidence to warrant a verdict against the defendant, and even with those expressions before us, we are still of this opinion. The language of an opinion must be

taken in connection with the facts of the case. It cannot be expected, in stating a rule of law applicable to those facts, always to include all the limitations and restrictions which might make it precise. In the Sullivan case the crime charged was punishable by imprisonment in the penitentiary, and was plainly of the nature called infamous in the law, and what is perhaps more important, the information was as direct a charge of crime by the state which by its proper officers was prosecuting it, as though it had been an indictment, and the penalty which the state was endeavoring to fasten on the defendant was not a money judgment, but a degrading and humiliating expulsion from the bar, and a prohibition of his following his profession. The court says that there was no preponderance of evidence showing guilt, but further fortifies its decision by saying that preponderance would not be sufficient. We do not think that the opinion was intended to change or extend the rule which preceding cases had established.

Finally, it is claimed that although in actions for deceit by false representations, the rule in Illinois requires proof that the representations must have been knowingly made, with the intent to deceive, the verdict and judgment sought to be upheld were rendered without any proof that the defendant knew of the existence of a lien or trust deed on these premises. It is further insisted that this necessity of the proof of the *scienter* was omitted from the instruction on punitive damages that we have before recited.

We cannot agree that there is no evidence tending to prove knowledge on the part of the defendant in the legal sense of the falsity of the representations imputed to him. He was said to have represented, in positive terms, the property to be without encumbrance. In the legal sense, if he did not know anything about it, he knew that that representation was false. It was in such a case morally false also. A man cannot state with positiveness and as of abso-

lute knowledge a proposition of fact affecting the in-terests of another, of which he actually knows nothing, for the purpose of affecting that other person's actions for the speaker's advantage, or that of his principal, and be accounted truthful, even if he happens to chance on the correct statement. If his statement chances to be false, he must, moreover, in such a case, bear the consequences of its falsity. Smith v. Richards, 13 Peters, 26; Stone v. Denny, 4 Metcalf, 151; Borders v. Kettleman, 142 Ill. 96.

In this case besides, there is evidence that the defendant took the acknowledgment of the trust deed in question, and evidence, competent to go to the jury for what it might be worth, of his evasive and suspicious conduct and answer when, after discovery of the mortgage was made, he was interviewed by the plaintiff and her mother.

In the instruction attacked we think that the *"scienter"* was sufficiently contained in the provision that the representations and statements must be found to be false and made "knowingly and maliciously." No reasonable construction could be given to the word "knowingly" which referred it to anything but the falsity, of the representations.

Three juries have been called and two have passed on this cause. We find in the record of the last trial no reversible error, and the judgment of the Superior Court must be and is hereby affirmed.

*Affirmed.*