Peoples Gas Light & Coke Company, Appellee, v. Cook
    Lumber Terminal Company et al., Defendants.
    E. L. Cook, Appellant.

Gen. No. 34;022.

358

SCANLAN, J., dissenting.

Opinion filed March 11, 1930.

MORTON S. CRESSY, for appellant; PRESTON CLARK and GILBERT W. SCHOENWALD, of counsel.

COOKE, SULLIVAN & RICKS, for appellee; EDWIN HEDRICK and EDMOND W. HEBEL, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Complainant filed its verified bill in the circuit court of Cook county praying for a perpetual and also a temporary injunction against defendants. On the following day, September 25, 1929, after notice, there was a hearing on complainant's motion for a temporary injunction, and the court, following the prayer of the bill and solely upon its allegations and the provisions of a certain easement agreement made a part thereof, enjoined defendants, their agents and attorneys, until further order, "from constructing or erecting over, within or upon the ten (10) foot strip of land covered by a certain grant of easement given by Atchison, Topeka and Sante Fe Railroad Company, as grantor, to Peoples Gas Light and Coke Company, as grantee, under date of March 1, 1920, . . . *either the said building* referred to in the bill of complaint, and to be located at 3630–3648 West 38th street, Chicago, *or any other building* or structure that *will in any way interfere with,* infringe upon, trespass upon, damage or destroy the rights, privileges and easements to lay, operate, maintain, repair, renew, relay or replace gas mains and appurtenances thereto now possessed by said Peoples Gas Light and Coke Company under and by virtue of the aforesaid easement grant."

By virtue of the provisions of section 123 of the Practice Act, Cahill's St. ch. 110, ¶ 122, one of the defendants, E. L. Cook, took an appeal from the order to this court by filing his bond, with surety, with the clerk of the circuit court, which bond was approved by said

clerk on October 7, 1929, and the appeal was perfected within apt time in this court. On December 31, 1929, by a majority opinion, said injunction order was reversed, but subsequently, upon complainant's petition, a rehearing was granted and defendants made written answer to the petition. In the light of additional arguments of opposing counsel we have given further consideration to the case.

In the petition for rehearing complainant's counsel contend that this court has "no jurisdiction or power" to reverse said order for the reason that only one of the defendants (E. L. Cook) appealed therefrom whilst all four defendants joined in the assignment of error, and that the present appeal should be dismissed. We do not think there is any merit in the contention. A somewhat similar one was made and denied in *Commerce Vault Co. v. Hurd & Nettleton*, 73 Ill. App., 107. In that case Hurd and Nettleton had obtained a temporary injunction in the circuit court against the Vault Company and three other defendants, and the Vault company within apt time had filed its appeal bond with the clerk of the circuit court. The appellees moved to dismiss the appeal upon various grounds, among them the third, that "no order of court was entered allowing appellant to appeal separately." After stating that the statute (now said section 123) allowing appeals from interlocutory orders granting injunctions "does not contemplate that the court entering the order for injunction shall have anything to do with the appeal," that "the taking of an appeal consists of a single act—filing a bond approved by the clerk," that "no prayer for an appeal is to be addressed to anybody," and that "no notice of appeal is necessary," the court held that said third ground was untenable, and said (p. 111): "The right to appeal is not limited to all the parties against whom the injunction may run." (See *Neil v. Oldach*, 86 Ill. App. 354, 355, and also section 97 of the Practice Act, Cahill's St. ch. 110, ¶ 97.) We think it clear that

the present case is properly before us for review on the sole question whether the court erred in granting said temporary injunction order.

As the order was granted solely upon the allegations of the bill and the provisions of the easement agreement made a part thereof, and before any pleading had been filed by defendants, the question whether the court erred in granting the order must be determined from the well pleaded facts as alleged. The bill not only prayed for a temporary injunction to the extent as above stated but also for a perpetual one to the same extent. In *Baird v. Community High School Dist.,* 304 Ill. 526, 529, our Supreme Court said: "When a bill of complaint is presented to a court praying for relief which the court has jurisdiction to grant upon a final hearing, and facts are stated which *prima facie* give a right to such relief, the court may, and frequently should, grant a temporary injunction where the effect will be no more than the mere maintenance of the *status. quo.*" And the court further said: "It is essential that the bill should make a *prima facie* case 'for *final* relief by alleging facts which, if proved and not controverted, will entitle the complainant to the relief prayed for." In *Novnanian v. Bedessern,* 63 Ill. App. 353, 355, it is said: "If he (complainant) can have no relief at the hearing, he can have no interlocutory injunction. (See also, *Koelling v. Foster,* 150 Ill. App. 130, 134.)

The bill alleged that complainant, an Illinois corporation with principal office in Chicago, is now and for many years has been engaged as a public utility in the business of supplying gas to the City of Chicago and its inhabitants for illuminating, heating and industrial purposes; that defendant, Cook Lumber Terminal Co. (hereinafter referred to as the Lumber Co.) is also an Illinois corporation with principal place of business in Chicago; that defendant, E. L. Cook, is the president of the Lumber Co. and in active charge of its business;

that defendant Jensen is engaged in the business of general contracting for masonry and brick work: that defendant Epstein is an architect; that complainant has an extensive system of gas mains laid underground in the city; that most of its principal mains are laid in the public streets under authority of statute and ordinance provisions, but in numerous instances they are laid in private rights of way either owned by complainant in fee or for which grants of easements have been secured by it; and that none of said mains is laid or maintained under buildings.

The bill further alleged that on March 1, 1920, complainant, for a valuable consideration paid by it, secured from the Atchison, Topeka & Santa Fe Railroad Company (hereinafter referred to as the Railroad Co.) an easement agreement, granting to complainant a perpetual right, privilege and easement ''to lay, operate, maintain, repair, renew, relay and replace a gas main (with its appurtenances), of such size as complainant might from time to time elect, in, through, under, along and across a strip of land ten feet in width situated on certain property in Chicago,'' then owned by the Railroad Co. (Here follows description.) A copy of the easement agreement is attached to and made a part of the bill, as ''Exhibit A,'' and it is alleged that the original thereof was filed for record in the office of the recorder of Cook county on July 15, 1920.

The easement agreement dated March 1, 1920, is between the Railroad Co., first party, and the Gas Co. (complainant), second party. In the recitals reference is made to an attached blue print marked ''Exhibit A'' and made a part of the agreement. And in Article I of the agreement it is stated that, in consideration of $945 paid by the Gas Co. and of its faithful performance of its covenants, the Railroad Co. grants unto the Gas Co., its successors, lessees, and assigns, the perpetual right or easement, as stated in the bill as above

mentioned, "together with the right temporarily to use, from time to time as required, so much of the surface of the land adjacent to said ten foot strip for depositing the earth removed in excavating the ditch, and for the placing and use of excavating and construction equipment and material as, together with the use of the surface of said ten foot strip, may be necessary in laying, relaying, replacing or repairing said gas main, . . . *provided, however,* that the use of such adjacent land for such purpose or purposes by the Gas Co., its successors, lessees and assigns, *shall not interfere with its use as required by the Railroad Co.,* its successors, lessees *or assigns."*

In paragraph 1 of Article II of the agreement it is provided that the gas main shall be constructed and installed in a workmanlike manner, "and so that the same shall not necessitate any change in the present elevation at the point of crossing or in the gradient or use of any existing sewer or sewers or in the use of any pipe lines, conduits or other facilities now located upon or across the premises covered by this easement"; that the gas main shall be laid beneath the surface of said ten-foot strip "so that the top of said pipe shall be at an elevation ten feet above Chicago City datum" (as shown by a certain profile, marked "Exhibit B" attached to and made a part of the agreement) ; and that, before undertaking any work of installing, relaying or replacing the gas main underneath any track, the Gas Co. will give the Railroad Co. at least five days written notice to enable it to protect its property during the period of disturbance.

In paragraph 3 of Article II it is provided "that, except in the easement and rights herein granted, *full and complete* title, ownership and *use* of the property herein involved is reserved to the Railroad Co., its successors *or assigns."*

In paragraph 4 it is provided that the Gas Co. "will at all times keep and maintain said gas main in such order and condition that the same will not at any time be a source of danger to or interference with the existing tracks, or tracks which the Railroad Co. may in the future construct across said strip of ground, or existing sewers, conduits, pipe lines, *buildings,* or other property of the Railroad Co., or the safe operation of its railroad."

In paragraph 5 it is provided that the Railroad Co. shall not be liable to the Gas Co. for any loss or damage suffered by the Gas Co. "in the lowering or otherwise changing of its said gas main growing out of or incidental to the opening of any streets by the City of Chicago across said premises."

In paragraph 7, it is provided that "the foregoing covenants shall continue to run in favor of the Railroad Co., its successors *and assigns* unless or until said ten-foot strip shall by dedication, condemnation or otherwise fall within and become a part of a public street in the City of Chicago."

In paragraph 8 it is provided that "this agreement shall be binding upon and inure to the benefit of the parties, their respective successors *and assigns.*"

The bill further alleged that complainant, shortly after securing said easement grant, laid under and across the premises, and within said ten foot strip, "a thirty six (36″) inch gas main," which since its installation has carried and is now carrying a flow of gas at medium pressure,—approximately six pounds per square inch; that the gas main is one of the principal arteries of the system by which gas is supplied to and distributed by complainant throughout the south part of said city; that it consists of cast iron pipes, 36 inches in diameter and approximately 12 feet in length; that the pipes are held together by lead joints, of adequate strength for the medium gas pressures now used; that

should it be required to substantially increase the gas pressure, it will be necessary to replace said joints with others of a different type of construction and of greater strength; that because of the increasing demand for gas, it will be necessary within the next two or three years to change said joints and make repairs or replacements in the particular gas main on said premises and for that purpose free access to it will be required; that at present it frequently becomes necessary to make repairs and other changes in existing gas mains; that sudden changes in temperature, defects in piping, surface disturbances, etc., from time to time cause leakages or breaks, necessitating immediate repairs or replacements; and that it is essential for complainant, in order properly to fulfill its obligations as a public utility to furnish gas and render satisfactory service to the public, to have ready access at all times to all of its gas mains, and be able without delay or hindrance to reach the same by making excavations, etc.

The bill further alleged that since said agreement was executed and the gas main laid, the Railroad Co. sold the premises, subject to said easement grant, either to defendant, the Lumber Co. or to defendant, E. L. Cook, and they are now in possession thereof under claim of ownership; that ''some months ago'' said Cook notified complainant that the Lumber Co. ''intended to erect and construct, over and upon a part of the strip of land under which complainant's said gas main is laid . . . a permanent brick building''; that complainant immediately informed Cook and the Lumber Co. ''that the proposed building would *interfere with* and trespass upon complainant's rights under said easement, and that complainant did, and would at all times, object to the construction thereof''; that complainant ''has at all times since continued to insist upon said objections'' and its ''said position'' has at all

times been known to the Lumber Co. and to said Cook; that "from and since said time *negotiations have been continuously pending*" between complainant and Cook "for the purpose of reaching an agreement about the construction of the proposed building in such a manner and on such location as will not interfere with complainant's easement rights"; that on or about September 18, 1929, Cook notified complainant that the Lumber Co. "intended to proceed to construct a foundation for a permanent brick building, which would be located at 3630–3648 West 38th Street, Chicago, and which would rest upon, cross and enclose a part of the strip of land covered by the aforesaid easement"; that the Lumber Co., "while pretending to be negotiating with complainant about its easement rights, has in fact caused a cement foundation to be commenced for such building"; and that "both the south and west sides of said foundation cross said main of complainant, and that any building erected on said foundation will cover and enclose within its walls more than sixty (60) feet of said main, *and will deprive complainant of access* to said section of said main and will *interfere with,* impair and obstruct the enjoyment of and use by complainant of the rights and privileges granted to and possessed by it under said easement grant."

The bill further alleged that the Lumber Co., in disregard of complainant's rights, "now threatens to, and unless restrained will, proceed to construct said permanent brick building over and upon a part of the strip of land covered by the aforesaid easement, and over, upon and across more than 60 feet of said 36 inch gas main"; that said building, if constructed, "will greatly and irreparably damage and injure" complainant and infringe upon its rights and privileges under said easement; and that the Lumber Co., in connection with the erection of the proposed building, has employed defendant, Jensen, as masonry contractor, and defendant Epstein, as architect, and that both "are now partici-

pating in the work of preparing for the construction for the Lumber Co. of said building to be located upon the place aforesaid."

In 9 Ruling Case Law, p. 799, sec. 55, it is said: "It is a general rule that a grant of an easement of a right of way does not, by implication, include the right to have that way kept open to the sky for light and air, and that the grant is not interfered with by building over the way, provided there is no interference with the *reasonable* use of the easement as a passageway; subject to the easement, the landowner's control extends indefinitely upward from the surface and downward." In 2 Tiffany on Real Property, 2nd ed., p. 1353, sec. 371, it is said: "The owner of a right of way in a city cannot ordinarily demand that the space over the way be absolutely free from projections above the way, such as bay windows, at such a height as not to interfere with the right of passage, and the owner of the servient tenement may even *place an arch over,* or otherwise span, the line of the right of way, and *erect a building thereon,* provided the building is not so near the ground as *unreasonably* to interfere with the user of the way, and, provided further, the language of the grant, construed with reference to the surrounding circumstances, does not indicate an intention that nothing shall be erected thereover."

In *Tacoma Safety Deposit Co. v. City of Chicago,* 247 Ill. 192, 196, it is said: "We think that the law is well settled that the owner of real estate, subject only to a public or private easement, has the right to use his property for any purpose which he may deem proper, so long as the use to which it is put does not interfere with the proper enjoyment of the easement which is held by the public or by a private person therein."

In *Doan v. Allgood,* 310 Ill. 381, 384, our Supreme Court reiterates the above statement of the law as made in the *Tacoma Deposit Co.* case, and further

says: "On the other hand, the owner of the easement is entitled to its full enjoyment, together with every right necessary to such enjoyment. He has no right, *merely for the sake of convenience,* to interfere with the owner's control and *beneficial use* of the land further than is *necessary* for the *reasonable* enjoyment of his easement."

In Jones on Easements (1898 Ed.), p. 669, sec. 832, it is said: "The owner of the servient estate has the right to improve his estate, and to this end to change any structure connected with the easement, so as to make it more ornamental, provided he does not impair the easement or make it less fit for the service for which it was acquired. Thus, where an easement in the use of an aqueduct was acquired by prescription, and there was a covering over the reservoir upon the servient estate, it was held that the form of the covering was not fixed by the prescription, but that this might be reasonably changed by the landowner in the improvement of his grounds, no injury being done to the aqueduct." (Citing *Olcott v. Thompson,* 59 N. H. 154, 156.)

Complainant's position, as appears from statements made in the briefs and upon oral argument, is in substance that, because of the provisions of the easement agreement and the installation and user of the gas main thereunder, the Lumber Co. or Cook, as grantee or assignee from the Railroad Co. of the premises, cannot lawfully improve them by the erection of the proposed building, or *any* building, for the reason that such a structure will *interfere with* complainant's right of access to its gas main whenever it becomes necessary or advisable to make repairs or replacements. We are of the opinion that this position is untenable. It is contrary to the principles of the law concerning easements as above set forth. We find nothing in the easement agreement indicating that the intention of the

parties was that no building should ever be erected over the ten-foot strip. Indeed, paragraph 3 of Article II of the agreement indicates a contrary intention. It is there provided that, "except in the easement and rights herein granted, *full and complete* title, ownership *and use* of the property herein involved is reserved to the Railroad Co., its successors *or assigns.*"

It is apparent that no building or structure can be erected over the portion of the ten-foot strip without making complainant's access to said portion *less convenient* for the purposes mentioned. It would to some extent "interfere" therewith, and *any* interference is enjoined. Hence, the injunction virtually prevents the Lumber Co. or Cook until further order of the court from erecting the proposed building, or *any* building, notwithstanding the company or Cook has the right to improve the premises with a building, provided the same does not interfere with the *reasonable* enjoyment of complainant's easement. And the bill, upon which the injunction is based, is noticeable for what it does *not* allege. It alleges that Epstein is the architect and Jensen the masonry contractor for the building; that "some months" prior to the filing of the bill Cook notified complainant that the Lumber Co. intended to erect over and upon a part of the strip "a permanent brick building"; that complainant then objected; that since that time "negotiations have been continuously pending" between complainant and Cook "for the purpose of reaching an agreement" about the construction of the building "in such a manner and on such location as will not interfere with complainant's easement right"; that about six days before the bill was filed Cook notified complainant that the Lumber Co. intended to proceed to construct a foundation for the building, "which would rest upon, cross and enclose a part of said strip of land"; and "that both the south and west sides of said foundation cross complainant's

main, and that any building erected on said foundation will cover and enclose within its walls more than sixty (60) feet of said main, and will *deprive complainant of access* to said section of the main, and will *interfere with, impair and obstruct* the enjoyment, and the use by it,'' of said easement rights. But there are no allegations as to the nature or character of the previous negotiations mentioned, nor is it alleged how or in what manner complainant will be deprived of a *reasonable* access to its main for the purpose of making repairs, replacements, etc. The allegation that Epstein is the architect for the proposed building, and other allegations, indicate that plans for the building have been drawn and seen by complainant's representative. And for aught that appears to the contrary from the bill the plan or scheme of construction of the building may provide, by means of arches in the basement walls or otherwise, for all *reasonable* access for complainant to the portion of the main underneath the building and for the depositing of earth, etc., during the making of necessary excavations in said portion of the strip of land. And it is not alleged that the proposed basement walls or building will in any way injure the gas main. There are well settled rules that a court should exercise caution in issuing a preliminary injunction (32 Corpus Juris, p. 33); that such an injunction will not be issued in a doubtful case, or where its effect will be more than the mere maintenance of the *status quo* (C. J., p. 36); or where its effect is the granting of all the relief that can be obtained after a final hearing (C. J., p. 21); that the facts upon which a complainant relies for the issuance of a preliminary injunction should be stated in the bill with particularity (C. J., p. 321); that all reasonable inferences arising from the allegations, indicating that complainant might not be entitled to the relief as prayed, should be negatived (C. J., p. 322); and that facts, rather than conclusions

or opinions of the pleader, should be stated (C. J., p. 322). In 14 Ruling Case Law, sec. 32, p. 331, it is said) : "It is not enough that a complainant shall allege in his bill that the injury will occur to himself or property, but he must show facts to enable the court to judge if the injury will be of the character stated. It is therefore essential that a full and candid disclosure of the facts should be made, and if the case of complainant shows that this has not been done, or if it shows a concealment of facts which would, if stated, materially affect the conscience of the court, the chancellor may properly refuse an injunction." In 1 High on Injunctions, 4th Ed. Sec. 5, p. 9, it is said: "The court will not, however, upon an application for an interlocutory injunction, shut its eyes to the question of the *probability* of plaintiff ultimately establishing his demand, nor will it by injunction *disturb defendant in the exercise of a legal right* without a *probability* that plaintiff may *finally* maintain his right as against that of the defendant." In 2 High on Injunctions, sec. 1696, p. 1645, it is said: "But the rule that the granting or denying of a preliminary injunction involves such an exercise of judgment upon the part of the chancellor as will not be disturbed upon appeal does not apply to cases involving questions of law arising upon the face of the bill." (Citing *Burlington C. R. & N. Ry. Co. v. Dey,* 82 Iowa, 312, 344). Tested by these rules, and considering the allegations of the bill and the provisions of the easement agreement, we are of the opinion that the temporary injunction order appealed from was improvidently issued. We do not think that in the present bill complainant made a full and candid disclosure of all the facts, particularly as to what occurred during the negotiations between the parties prior to the filing of the bill and as to the respective positions then taken by them. Nor do we think that the bill sufficiently shows that by the erection of the pro-

posed building complainant will be deprived of a *reasonable* access to the portion of its gas main involved, which is all that it is entitled to under the law and the provisions of the easement agreement.

On rehearing complainant's counsel refer to certain holdings in the cases of *McDougall Co. v. Woods,* 247 Ill. App. 170, and *Friedman v. Peckler,* 255 Ill. App. 199 (appeals from orders granting temporary injunctions), and contend that because of these holdings this court on the present appeal "should disregard any and all questions as to the sufficiency of the allegations of the bill, with respect to the method of statement employed, even if the court should feel that the bill was somewhat defective in that respect." While we cannot agree with all that was said in the opinions of those cases, respecting the right or duty of this court on an interlocutory appeal to consider whether a bill is vulnerable to a general demurrer, yet that is not the question on the present appeal. The sole question before us is whether, from all the facts and circumstances disclosed from the present bill, the chancellor was justified in granting the drastic injunction as first above mentioned. If the case may not be considered from this viewpoint then the right of review by this court given by statute (sec. 123, Practice Act, Cahill's St. ch. 110, ¶ 122) would be rendered practically nugatory in many cases. It is therein provided that "whenever an interlocutory order or decree is entered in any suit pending in any court in this State, *granting an injunction,* or overruling a motion to dissolve the same . . . an appeal may be taken from such interlocutory order or decree to the Appellate Court of the district wherein is situated the court granting such interlocutory order or decree"; and that "upon such appeal the Appellate Court may affirm, modify or reverse such interlocutory order or decree, and shall direct such proceedings to be had in the court below as the justice of the case may re-

quire.'' Nothing is said in the section suggesting that the right to take such an appeal, or to have the interlocutory order reviewed, is in any way dependent upon what may be the state or condition of the pleadings in the trial court. In *McCarthy v. City of Chicago,* 197 Ill. App. 564, 575, it is said that said section "was intended to secure a quick and summary review of interlocutory orders or decrees.'' In *People v. Sears,* 230 Ill. App. 484, 489, it is said: "The language of this section is as broad and comprehensive as it is possible to employ. No class of cases is excluded.'' In *People v. Standidge,* 333 Ill. 361, 365, it is said that the statute "provides for the filing of the record and for a hearing. Obviously, the purpose of filing the record is that it may be considered on the appeal. The hearing is judicial in its nature. . . . The statute authorized the Appellate Court to direct the trial court to proceed 'as the justice of the case may require.' Hence it was clearly within the jurisdiction of the Appellate Court, in reviewing the interlocutory order from which the appeal was taken, to consider the *evidence* upon which the order was based. Such a consideration was necessary to determine whether the issuance of the preliminary injunction was justified.'' In the present case the only evidence upon which the chancellor based the injunction order was complainant's verified bill, viz, the facts and circumstances as therein alleged. In *Stover Mfg. Co. v. Mast, Foos & Co.,* 89 Fed. Rep. 333 (a case decided by the U. S. Circuit Court of Appeals for the seventh circuit) it appears that, upon a bill and *ex parte* affidavits filed by the complainant, the chancellor granted an interlocutory injunction against infringement by defendant of a certain Letters-Patent, and that on appeal from such order complainant's bill was dismissed,— the court being of the opinion that the bill had no equity to support it. The decree was affirmed by the Supreme Court of the United States (177 U. S. 485,

494). In view of the provisions of the statute and the authorities cited, we think it is our duty to reverse the interlocutory injunction order appealed from for the reasons above outlined.

Accordingly, the injunction order of September 25, 1929, is reversed.

*Reversed.*

BARNES, P. J., concurs.

MR. JUSTICE SCANLAN dissenting: I dissented from the original judgment that was entered in this case, and upon the rehearing, after a careful reconsideration of the very important questions involved in the present appeal, I am compelled to dissent from the present judgment of this court, and I deem it necessary to state the reasons for my dissent.

Counsel for defendants, upon notice, appeared before the chancellor at the time of the motion for the temporary injunction. They filed no answer and offered no affidavits or evidence in opposition to the application and it is clear that they desired to have the motion determined, not upon the merits, but solely upon the sworn bill.

The complainant is a large public service corporation and the easement in question is a very important one to it and the public whom it serves. The easement gives the complainant the perpetual right, privilege and easement to lay, operate, maintain, repair, renew, relay and replace a gas main (with its appurtenances) of such size as the complainant might from time to time elect, in, through, under, along and across a strip of land ten feet in width and over 2,000 feet long, and also "the right temporarily to use, from time to time as required, so much of the surface of the land adjacent to said ten foot strip for depositing the earth removed in excavating the ditch, and for the placing and use of excavating and construction equipment and material, as, together with the use of the surface of said

ten foot strip, may be necessary in laying, relaying, replacing or repairing said gas main in, under and along said ten foot strip.'' The bill alleges that shortly after it secured the easement agreement it ''entered' upon said premises . . . and laid under and across said premises and within said ten foot strip designated by said easement grant a thirty-six (36'') inch gas main which said main at all times since its installation has carried and now carries a flow of gas at medium pressure,—to-wit, approximately six (6) pounds per square inch—*and is one of the principal arteries of the system by which gas is supplied to and distributed throughout the south part of said City of Chicago by your orator.* Said gas main consists of cast iron pipes thirty-six (36'') inches in diameter and approximately twelve feet in length. Said pipes constituting said main are held together by lead joints, which are of sufficient and adequate strength for the medium gas pressures now used in said main. When and as it is necessary for your orator substantially to increase the pressure under which gas is conducted through said mains, it will be necessary for your orator to replace said joints by joints of a different type construction and of greater strength. The increase and demand for gas throughout the south part of the City of Chicago will, in the opinion of your orator, within a short length of time, to-wit, within the next two or three years, necessitate the changing of said joints in order that gas of much higher pressures, to-wit, approximately twenty (20) pounds per square inch, may be carried through said mains, and the replacing and/or renewing of said joints; and in order to make said changes it will be necessary for your orator to have free access to uncover said mains at all points. It is necessary for your orator from time to time to make repairs and other changes in its mains and the joints thereof, including said mains laid through said property under the easement aforesaid.

Sudden changes in temperature, defects in piping, surface disturbances and other causes which cannot be foretold, from time to time cause leakages or breaks in said mains and joints and necessitate repairs or replacements. *It is impossible for your orator to know at any time where said leakages or breaks may occur, but in its large gas mains, to-wit, mains between twenty-four (24") and forty-eight (48") inches in diameter, such breaks or leaks, frequently as many as twenty to thirty a year, occur. In case of such leaks and breakages or in case of making necessary changes in mains, it is essential that your orator, in order safely and properly to fulfill its obligations as a public utility to furnish gas and to render adequate, efficient and satisfactory public service, and in order safely to carry on and conduct its business of transporting gas through said mains and in order fully to protect the lives and property of the general public from injury and damage by explosions and other dangers resulting from gas leakages occurring in said mains, have ready access at all times to its mains and be able promptly and without delay or hindrance to excavate to and reach said mains."*

The law on the relative rights of the parties in the matter of an easement has been settled by our Supreme Court in *Doan v. Allgood,* 310 Ill. 381, where the rule is thus stated: "The owner of land has the right to use the land for any purpose he may deem proper, so long as such use does not interfere with the proper enjoyment of the easement. (*Tacoma Safety Deposit Co. v. City of Chicago,* 247 Ill. 192). On the other hand, the owner of the easement is entitled to its full enjoyment, together with every right necessary to such enjoyment. He has no right, merely for the sake of convenience, to interfere with the owner's control and beneficial use of the land further than is necessary for the reasonable enjoyment of his easement."

In the opinion of the majority it is stated that the complainant's position is, in substance, that the defendant Lumber Company cannot lawfully erect the proposed building or any building on the premises in question "for the reason that such a structure will *interfere with* complainant's right of access to its gas main whenever it becomes necessary or advisable to make repairs or replacements," and the opinion holds that this position is untenable. The opinion misapprehends the position of the complainant, and, in my opinion, this misapprehension has affected the final judgment of the majority of the court. One of the contentions of the complainant is that "there are no provisions in the easement grant that reserve to the grantor or his successors the right to construct a building or other structure over the 10-foot strip covered by the easement grant, *if such building interferes with the use and enjoyment of the easement.*" (Italics mine.) The major contention of the complainant, as clearly appears from its brief, is that "the owner of the servient tenement cannot make such use of his estate as will encroach upon or interfere with the easement right created by the easement grant," and in support of this contention the complainant states that the only question for decision "is whether or not the threatened acts of the defendants will interfere with the reasonable enjoyment of the easement right granted to the complainant," and further states that complainant "recognizes, also, the well settled legal principle . . . that the owner of the servient tenement may use the property in any way not inconsistent with the rights of the dominant tenant." The bill alleges that the complainant negotiated with the defendants "for the purpose of reaching an agreement about the construction of said proposed building *in such a manner* and on such location *as will not interfere* with said easement rights possessed by your orator." In the

brief of the defendants they state that "the bill of complaint affirmatively shows that the defendant has endeavored to reach an agreement with the complainant about the construction of said proposed building in such a manner as will not interfere with the said easement." In the petition for rehearing filed by the complainant it asserts that the majority of the court has entirely misapprehended its position and that it does not contend that no building of any kind could ever be erected on the property covered by the easement. It seems clear that the holding of the court in reference to the alleged position of the complainant, decides a question not involved in the case. The defendants have the right to erect a building on the premises in question so long as such use does not interfere with the full enjoyment of the easement. The temporary injunction merely prohibits the construction or erection over, within or upon the 10-foot strip of land covered by the easement, of the building referred to in the bill of complaint, or any other building or structure *that will in any way interfere with, infringe upon, trespass upon, damage or destroy the rights, privileges and easements* granted to the complainant by the easement grant. I do not think that the order is too broad, but even if it is, we have the right to modify it or to direct the chancellor to modify it. By the judgment of this court the injunctional order is reversed *in toto.*

For the purposes of this appeal, all material allegations, well pleaded, must be taken as true. In my opinion, the only question necessary to decide on this appeal is, whether or not the allegations of the bill, well pleaded, make out a *prima facie* showing that the threatened acts of the defendants will interfere with the reasonable enjoyment of the easement granted to complainant, or, to put it in another way, Is the bill vulnerable to general demurrer? (See *Florin v. Rayman,* 176 Ill. App. 106; *Herzberger v. Barrow,* 115 Ill.

App. 79, 82; *Baird v. Community High School Dist.*, 304 Ill. 526, 529; *Spiegler v. City of Chicago*, 216 Ill. 114; *Young v. Federal Union Surety Co.*, 183 Ill. App. 278, 282; *Koelling v. Foster*, 150 Ill. App. 130.) The defendants contend that the bill is vulnerable to general demurrer, and, if it is, in my opinion, it would be the duty of this court to reverse the injunctional order, for if the bill is vulnerable to general demurrer it fails to state a *prima facie* case and it, therefore, presents no grounds for equitable relief, and the action of the chancellor in granting a preliminary injunction upon such a bill would be clearly unwarranted. To warrant a preliminary injunction the bill should make out a *prima facie* case for final relief. (See cases last above cited.)

The opinion states that the bill does not sufficiently show that the erection of the proposed building would deprive the complainant of a reasonable access to its easement. This is a holding that the bill does not make out a *prima facie* case, while in that part of the opinion that refers to the cases of *McDougall v. Woods*, and *Friedman v. Peckler* it is stated that the question as to whether or not the bill is vulnerable to general demurrer is not involved in the present appeal. These two holdings are not in harmony, for if the bill fails to make out a *prima facie* case, it is vulnerable to general demurrer. However, in my judgment, the bill does make out a *prima facie* case, and is, therefore, not vulnerable to general demurrer. It alleges that the defendant Cook Lumber Company notified the complainant "that the said defendant corporation intended to erect and construct over and *upon a part of the strip of land under which the said gas main of your orator is laid* under and by virtue of the aforesaid easement grant, *a permanent brick building*"; that about September 18, 1929, the defendant Cook Lumber Terminal Company notified the complainant "that said defend-

ant corporation intended and proposed to proceed to erect and construct a foundation for and a permanent brick building which would be located at 3630–3648 West 38th Street, Chicago, Illinois, and which *would rest upon,* cross and enclose *a part of the strip of land* covered by the aforesaid easement granted to your orator and under and by virtue of which your orator has laid its said gas main as aforesaid; that said defendant corporation, while pretending to be negotiating with your orator about the easement rights of your orator, has in fact caused a cement foundation to be commenced for said building and that both the south and west sides of said foundation cross your orator's main and *that any building erected on said foundation* will *cover* and enclose within its walls *many feet of said main, to-wit, more than sixty* (60) *feet, and will deprive your orator of access to said section of said main* and will interfere with, impair and obstruct the enjoyment of and use by your orator of the rights and privileges granted to and possessed by your orator under the said easement grant''; that the said defendant ''now threatens to, and, unless restrained by order of this honorable court, will proceed to construct and erect said permanent brick building over *and upon a part of the strip of land* covered by the aforesaid easement granted to your orator and over, *upon* and across *many feet, to-wit, more than sixty (60) feet of said thirty-six (36") inch gas main of your orator.''*

These allegations are statements of fact that bear directly upon the material question as to whether or not the construction of the proposed building would deprive the complainant of a reasonable access to its gas main for the purpose of making necessary repairs, etc., and, in my opinion, they cannot fairly be termed ''conclusions rather than facts.'' They state as a fact that *the foundation and building* will not only inclose the strip of land in question but *will cover a substantial portion of the same.* In my judgment, a building, so

constructed, would interfere with the full enjoyment
of the easement. As the complainant contends, "it is
no answer to assert that repairs and replacements can
be made by bracing and supporting a building and then
tunnelling from the ends or by tearing up the floor of
the building if the tenants at such time see fit to permit
complainant to have access to the building. As pointed
out in *Goodhart v. Hyett*, 25 Ch. Div. 182, and *Wheeler
v. Black*, 14 Canada S. C. 242, such burdens or risks
are not thrown upon the easement holder. He has a
right to use the easement granted free from such addi-
tional burdens and interference." The bill alleges
that in order to carry on and conduct its business of
transporting gas through the said mains and to protect
the lives and property of the general public from injury
and damage by explosions and other dangers resulting
from gas leakages occurring in its mains, it is necessary
for the complainant to have ready access at all times
to its mains and to be able promptly and without delay
or hindrance to excavate to and reach its mains. The
bill also alleges that the proposed building *"will de-
prive your orator of access to said section of said
main."* This is an allegation of an ultimate fact and
it is directly supported by the other allegations of fact,
immediately preceding it, and to which I have hereto-
fore called attention. As argued by complainant: "An
allegation that an act will violate an agreement may
be a conclusion of law. But an allegation that the same
act will produce a certain physical result, is a statement
of an ultimate fact. 'Allegations of result are allega-
tions of fact and are not conclusions of law.' (*Bank of
Commerce v. Schooner* (1928), 263 Mass. 199, 160 N. E.
(790, 791.)" As against a demurrer, an allegation of
an ultimate fact or conclusion of fact is sufficient.
(*Curtiss v. Livingston*, 36 Minn. 380.) Conclusions of
fact are not vulnerable to a demurrer. (*Western Trav-
elers' Accident Ass'n v. Munson*, 73 Nebr. 858, 861.
See also *Williams v. Peninsular Grocery Co.*, 73 Fla.

937; *Crane v. Schaefer*, 140 Ill. App. 647, 652-3.) Moreover, the allegations of the bill must be tested by general demurrer, not by special demurrer.' A theory that the defendants can *build upon and cover a substantial portion of the strip of land involved in the easement with parts of a permanent building*, without depriving the complainant of the full enjoyment of the easement, "together with every right necessary to such enjoyment," seems to me untenable for two reasons, first, it would interfere with the reasonable enjoyment of the easement, and, second, it would place an intolerable burden upon the complainant and one not warranted by the easement grant or the law.

The opinion also holds, in effect, that the bill—even if it is not vulnerable to general demurrer—shows upon its face a concealment of facts, which, if they were stated, would materially affect the right of the complainant to an injunction, and that, therefore, this court has the right to reverse the injunctional order upon the ground that the chancellor abused his discretion. It is a settled principle of equity in this State that unless it *clearly appears* that the chancellor abused his discretionary powers in issuing a temporary injunction, the order will be affirmed on appeal. I have heretofore cited certain Illinois cases to the effect that on appeals of this kind the bill is to be tested as though the defendant had demurred to it, and the defendant can raise only such questions here as he could have raised in the lower court by general demurrer. I do not think that on an appeal of this kind it is the duty of this court, if it finds that the bill is not vulnerable to general demurrer, to search it for the purpose of determining whether or not the pleader has apparently concealed material facts. So far as I am aware, such a practice has never been followed in the Appellate courts of this State. On the motion for the injunction before the chancellor in the instant proceeding, the case stood as though the defendants had demurred to the bill, and

therefore the chancellor was *required* to decide only one question: Was the bill vulnerable to general demurrer? The defendants had the right to resist the application for the injunction, on the merits. They did not see fit to do so. The act provides various ways in which an injunctional order may be dissolved or modified, but the defendants did not see fit to take advantage of these provisions. On this appeal, if we find that the bill is not vulnerable to general demurrer, why should we *reverse* the chancellor upon a point that was not *necessarily* involved in the motion for a temporary injunction? In support of its holding the opinion relies upon a statement in 14 Ruling Case Law 331, sec. 32, to the effect that if the bill *shows* "a concealment of fact which would, if stated, materially affect the conscience of the court, *the chancellor may properly refuse an injunction.*" (Italics mine.) The author cites, in support of the text, *Reddall v. Bryan,* 14 Md. 444, and *Shoemaker v. National Mechancis' Bank,* 31 Md. 396. In each of these cases the complainant appealed from an order refusing the injunction asked. As stated by the Maryland court, the granting or refusing of a writ of injunction is a matter resting in the sound discretion of the chancellor. In *Reddall v. Bryan, supra,* the court held that the sufficiency of the bill depended upon a determination of the question as to whether or not the acts charged were done by the defendants without authority of law, and the court further held that it sufficiently appeared from the face of the bill that the defendants were acting under the authority of the government of the United States. In other words, the court held that the bill was vulnerable to general demurrer. The court stated: "We think there is a great force *in the view taken by the circuit court* of the manner in which the case of the complainant is stated in the bill, and cannot avoid the conclusion, 'that it is made out by the concealment of facts having a very important bearing upon it, and which would (if fully stated) act

materially upon the conscience of the court.'" (Italics mine.) In the above, the court quotes, with approval, from the opinion of the chancellor and sustains his action in refusing a preliminary injunction and held that he had not abused his discretion. I do not wish to be understood as contending that a chancellor *in the exercise of his discretion* may not refuse a preliminary injunction, even where the bill is not vulnerable to general demurrer, if the bill *shows* that the pleader has concealed material facts which, if pleaded, would affect the right of a complainant to an injunction.

The opinion in the present case reaches the conclusion that the bill shows that the complainant did not make a full and candid disclosure of all the facts, and that therefore the chancellor abused his discretion in entering the injunctional order, in the following manner: As there is an allegation in the bill that the Lumber Company employed an architect and mason contractor, it will be assumed that plans for the proposed building were drawn, and as there are allegations in the bill that negotiations took place between the complainant and the Lumber Company for the purpose of reaching an agreement as to the construction of the building in such a manner and on such location as would not interfere with complainant's easement rights, and as the bill did not make a full and candid disclosure as to what occurred during the negotiations, and especially as to the respective positions then taken by the parties, it will be assumed that the plans were seen by complainant's representative, and as the bill does not set up the plans, it will be assumed that they "may provide," by means of arches in the basement walls or otherwise, for all reasonable access for complainant to its mains, etc., and therefore it must be held that the chancellor improvidently granted the injunctional order.

Here the ultimate assumption, and the one upon which the instant ruling is practically grounded, is

based upon other assumptions. If the so-called rule in *Reddall v. Bryan, supra,* can be invoked, at all, in support of a judgment of this court reversing a chancellor, it certainly can be invoked only where the bill *shows* a concealment of material facts. The record shows that the defendants did not desire to have the motion before the chancellor determined on the merits. If we are to indulge in assumptions at all, we should assume that if the defendants had plans for the building that would not interfere with the easement rights of the complainant, they would, by answer or affidavit, have shown that fact to the chancellor. If the ruling upon the instant question is to be followed, a careful, cautious chancellor, even where he finds that a bill is not vulnerable to general demurrer, will refuse to grant a preliminary injunction unless he is certain that there are no allegations in the bill from which it might be inferred that the pleader has concealed facts which, if stated, might materially affect the judgment of the court. The *ultimate assumption* in the opinion, that the plans *"may provide"* by means of arches in the basement walls or otherwise, for all reasonable access for complainant to its mains, etc., is entirely unwarranted in view of the allegations in the bill *that the foundation and building will cover a substantial portion of the strip of land in question* and that the proposed building *"will deprive your orator of access to said section of said main."*

The defendants acquired the premises in question with full knowledge of the great importance of the easement right to the complainant and the public. The necessity for prompt access to the easement at all times is manifest from the bill. By the judgment of this court the preliminary injunction is dissolved *in toto* upon the *assumption* that the building to be erected by the defendants *"may provide"* "reasonable access" to the easement. If the defendants put up a building, parts of which will cover substantial portions of the strip of

land in question, it will then be practically impossible to right the wrong done the complainant. But, on the other hand, if the building the defendants intend to erect will not interfere with the reasonable enjoyment of the easement right, they may, in apt ways, make a showing to that effect and thereby bring about the vacation or modification of the injunctional order. Under the bill, the chancellor, in my judgment, was clearly justified in granting the temporary injunction, which merely maintains the *status quo*.

The injunctional order of the circuit court, in my opinion, should be affirmed.