### John C. Loftis, Appellee, v. Josephine Hessell Loftis et al., Appellants.

### Gen. No. 27,827.

1. INJUNCTION—*in what issue of writ without notice to defendants proper.* Where a bill to restrain defendants from issuing any certificate of stock of a corporation to one of the defendants, or to any other person, alleged facts which, if true, indicated a purpose on the part of defendants to gain control of the corporation and to deprive complainant of the larger part of the profits to which he was entitled as heir of the principal stockholder, then deceased, and that, in pursuance of such design, insanity proceedings had been instigated against complainant and certain defendants had pro-

cured the voting to themselves of excessive salaries, and showed that if the allegations of the bill were true irreparable injury might be done to complainant if defendants were given notice of the application for the injunction, the writ properly was issued without notice to defendants.

2. INJUNCTION—*circumstances authorizing issue of temporary writ without requiring bond.* Where a temporary injunction restraining defendants from transferring certain corporate stock did not interfere with their management of the corporation and it did not appear that any possible injury or damage would be done them by the restraining order while the rights of the parties were being determined, the injunction was properly issued without requiring a bond.

3. INJUNCTION—*when effect of writ upon pending probate proceedings not ground for reversal.* Where a bill to enjoin defendants from transferring shares in a corporation which were part of the estate of a decedent in the course of administration made out a proper case for equitable jurisdiction, an order granting a temporary injunction will not be reversed on the ground that it is an interference with the probate jurisdiction though at least part of the relief sought might be granted by the probate court under the authority of sections 81 and 82 of the Administration Act (Cahill's Ill. St. ch. 3, ¶¶ 82, 83).

4. INJUNCTION—*propriety of order restraining disposition of stock pending determination of ownership.* Where a bill in equity seeks as the principal relief the restoration to complainant of 250 shares of a corporation and also to have two other shares declared to be assets of the estate of his deceased brother, a restraining order which merely maintains the *status quo* by preventing defendants from transferring the shares in question will be affirmed.

Interlocutory appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in this court. Affirmed. Opinion filed June 26, 1922. Rehearing denied July 10, 1922.

JAMES HAMILTON LEWIS, ANDREW R. SHERIFF and HARRIS F. WILLIAMS, for appellants; CYRUS HEREN, of counsel.

COOKE, SULLIVAN & RICKS, for appellee; EDWIN HERRICK and FRANCIS L. DAILY, of counsel.

MR. JUSTICE DEVER delivered the opinion of the court.

John C. Loftis, complainant, filed a bill in the superior court of Cook county against the defendants.

The bill charges, in substance, that on July 30, 1920, one Samuel T. A. Loftis died intestate in the City of Chicago; that John C. Loftis, complainant, and Joseph S. Loftis, defendant, brothers of deceased, are his only heirs at law and next of kin; that at the time of his death Samuel T. A. Loftis was the owner of 2,998 shares of a total of 3,000 shares of the capital stock of Loftis Brothers Company, a corporation; that the two other shares of the capital stock of the corporation stood, one share each in the names of Josephine M. Hessell and E. C. Phillips; that Samuel T. A. Loftis was in fact the beneficial owner of the last-mentioned two shares of stock which he had caused to stand in the name of Hessell and Phillips, so that the latter might qualify as directors of the corporation.

The bill further charged that since the death of Samuel T. A. Loftis, Joseph S. Loftis and said defendant Josephine M. Hessell, named as defendant under the name of Josephine Hessell Loftis, have entered into a conspiracy to fraudulently control said company for the purpose of appropriating to themselves all or a large part of the profits of the business carried on by it and of preventing complainant from receiving his just share of said profits; that in pursuance of such conspiracy and fraudulent design, Joseph S. Loftis on August 14, 1920, reported to complainant that Josephine M. Hessell, who had long been a trusted employee of the company, might be influenced by reason of having no interest in the company to leave its employ, and that in order to secure her services and interest for the company it would be necessary to transfer certain stock to her; that as a result of this representation and of the conversation had with defendant, Joseph S. Loftis, it was agreed by complainant and Joseph S. Loftis that each would

give Josephine M. Hessell capital stock in the company of the par value of $25,000; that to effect the gift to her complainant and Joseph S. Loftis on August 14, 1920, executed a power of attorney, authorizing the administrators of the estate of Samuel T. A. Loftis to transfer to said Hessell $50,000 of the par value of the capital stock, to be taken in equal parts from the share of each of said deceased's coheirs; that the $25,000 par value of the stock was worth about $100,-000, a fact which was well known to Joseph S. Loftis and said Hessell, but was unknown to complainant.

It was further charged in the bill that defendants agreed that immediately upon obtaining legal control of the company they would vote to themselves such salaries as combined should amount to at least $40,000 per annum; that prior to the beginning of said conspiracy the combined salaries of Josephine M. Hessell and Joseph S. Loftis, who were both employed by defendant company, did not exceed the sum of $8,000 per annum.

The bill further charged that the defendants, Joseph S. Loftis and said Hessell, on August 14, 1920, the date when plaintiff was induced to transfer his stock to said Hessell, were about to intermarry, and that a short time after the transfer of defendant's stock to said Hessell said defendants were married; that the true intent and motive of said defendants in procuring the complainant to agree to give the stock of the company to said Hessell was to bring under the control of said defendants a majority of the shares of the outstanding capital stock of the company; that said defendants concealed their purpose from the complainant and that at the time said transfer to said Hessell was made both said defendants pretended to believe that complainant was then mentally deficient and insane and unfit to transact business; that said complainant, without any consideration whatsoever and upon representations made that the transfer was

for his best interest, transferred stock to said Hessell worth approximately $100,000; that complainant was wholly unaware of the value of said stock and relied upon the representations of Joseph S. Loftis; that the true value of the stock was concealed by both said defendants from complainant.

The bill charges that on August 16, 1920, said defendants, Joseph S. Loftis and Josephine M. Hessell, were duly appointed administrators of said deceased's estate; that they have qualified and are now acting as such; that among the assets of the estate of said deceased is the capital stock of said company; that said two defendants since their appointment as administrators have deliberately appropriated to themselves in the form of salary all or a large part of the net earnings of the company; that on August 17, 1920, the day following their appointment as administrators, said two defendants, having control of a majority of the shares of the capital stock of the company, called a meeting of its stockholders; that said Hessell, pretending to hold one share, and said E. C. Phillips, pretending to hold one share also of the capital stock, and said defendant Joseph S. Loftis, acting together elected said Joseph S. Loftis as director of the company to succeed said deceased; that on the same day a meeting of the board of directors, consisting of said defendants Hessell, Loftis and Phillips, wrongfully and fraudulently elected themselves as officers of the company; that on the following day, August 18, 1920, said three defendants again held a meeting of the board of directors and in furtherance of their fraudulent designs voted a salary of $15,000 per annum to defendant Josephine M. Hessell, and $25,000 per annum to defendant Joseph S. Loftis; that a few days thereafter, on September 1, 1920, the defendants Joseph S. Loftis and Josephine M. Hessell intermarried; that he, complainant, was awarded by defendants a salary of $400 per month by the company, although

said defendants have not permitted him to render any services in return therefor; that on July 7, 1921, the salary of said defendant Loftis was reduced to $12,000 per annum and that of said Josephine Hessell Loftis, his wife, was reduced to $13,000 per annum; that the combined services of said last-mentioned defendants are not worth more than $10,000 per year to the company; that no dividends have been paid by said company since it has been under the control of defendants; that in the month of May, 1921, the complainant first learned of the excessive salaries paid defendants; that complainant had urged said defendants to restore part of said salaries to the company; that said defendants have displayed an attitude of intense personal animosity toward complainant; that because of said conduct of said defendants complainant had caused to be served upon them a notice of his revocation of the power of attorney authorizing a transfer to said Hessell of a part of complainant's interest in the capital stock inherited by him from his brother; that notwithstanding the service of such notice upon defendants they have proceeded, and intend to proceed, to distribute to defendant Josephine Hessell Loftis 250 shares of the capital stock and to issue to said Josephine Hessell Loftis and said E. C. Phillips certificates representing one share each of the stock of the company, which said two shares are rightfully a part of the assets of the estate of said deceased.

The bill also charges that complainant fears that defendants, by reason of their control of the defendant company, will take steps toward completing the transfer of complainant's stock to said Josephine Hessell Loftis and to transfer said two shares to said Josephine Hessell Loftis and E. C. Phillips; that if the said stock is so transferred to defendants they will transfer them over to some third person or persons, and if so transferred to such third persons, without notice of complainant's equity therein, complainant's

right to the stock would be lost. Finally, the bill charges that the defendants in a final desperate effort to secure control of the defendant company had falsely, fraudulently and without justification, procured one Ely, a person unknown to complainant, to file in the probate court of Cook county on the 9th day of August, 1921, a sworn petition, which alleged that complainant was then insane and which requested that a conservator be appointed for him; that said petition was dismissed when complainant insisted upon an immediate trial; that said defendants have repeatedly attempted to gain control of the defendant company by demanding that a conservator or a trustee be appointed to manage complainant's interest; that in furtherance of this design defendants had suggested as such conservator or trustee persons friendly to defendants and hostile to complainant; that on September 29, 1921, complainant had filed in the probate court of Cook county a petition for the removal of said defendants as administrators of the estate of said deceased for misconduct as such; that a demurrer to said petition was overruled and that said proceeding is now pending in the probate court. By the prayer of the bill complainant sought to have defendants Josephine Hessell Loftis and Joseph S. Loftis enjoined and restrained from issuing to Josephine Hessell Loftis or to any other person under her any certificate of stock in said company on behalf of complainant.

The bill of complaint was filed January 18, 1922, and on the same day a temporary injunction was issued which restrained defendants Josephine Hessell Loftis and her husband, Joseph S. Loftis, from taking action under the alleged power of attorney of August 14, 1920, and from issuing to Josephine Hessell Loftis or E. C. Phillips certificates representing the two shares of stock above referred to.

The writ of injunction was issued without notice and without bond, and it is insisted that this was error.

If the allegations of the bill of complaint are true, then the complainant had reason to believe that he would sustain irreparable injury if notice were given of his intention to apply for the writ. The bill charges in direct terms a series of acts by defendants which, if true, would indicate their purpose to gain control of the defendant company and to deprive the complainant of the larger part of profits to which he was legally entitled as heir of his deceased brother.

The bill charges that the defendants had instigated proceedings in the probate court to have complainant declared insane and to have a conservator appointed for his estate. It also charges that before this proceeding was begun the defendant Joseph S. Loftis had influenced complainant to believe that defendant Josephine Hessell Loftis, who had for many years been a trusted employee of the defendant company, would, unless given an interest in the company, leave its employ; that as a result of the representations of Joseph S. Loftis complainant had executed the power of attorney.

There is force in the argument that if complainant was in fact insane or otherwise incompetent at the time the said petition was filed in the probate court, then he was hardly fitted mentally to take part in a transaction which so vitally affected his interest.

The bill charges that almost immediately after the execution of the power of attorney of August 14, 1920, the defendants reorganized the company and voted to themselves a large increase in salaries, and otherwise conducted themselves as though they owned the company and as though complainant had but slight interest therein. If these allegations are true, then, we repeat, complainant had good reason to believe that defendants would, if given notice, transfer stock in the company, which the complainant now says he owns, to third persons.

In the case of *Christian Hospital v. People ex rel.*

*Murphy,* 223 Ill. 244, it was held on the facts of that case that the injunction should not have issued without notice; but the court did decide therein that whether the rights of a complainant would be unduly prejudiced by the issuance of a writ without notice must be determined from an examination of the facts as they appear in the bill. Applying the rule to the present case, it is our opinion that the bill charges facts which, if true, abundantly authorized the issuance of the writ without notice to defendants.

The trial court did not err in ordering the issuance of the writ without bond. The restraining order does not impose any special hardship upon defendants. They are directed only to refrain from issuing to defendants Josephine Hessell Loftis and E. C. Phillips, or to any other person, the two shares of stock, and from issuing or transferring, under the authority of the power of attorney, the 250 shares of stock which complainant insists is his property. The writ of injunction runs against Josephine Hessell Loftis, Joseph S. Loftis and E. C. Phillips, who bring the case by appeal to this court.

The scope of the injunction writ is neither broad nor drastic. It does not seem to interfere with the conduct of the company's business, nor does it displace the defendants Josephine Hessell Loftis and her husband from its management. The evident purpose of the relief granted by the writ was to protect complainant from an issuance or transfer of the particular shares of stock referred to in the writ. Taking the bill at its face value, it appears that the two shares of stock referred to therein are a part of the assets of the deceased brother's estate, and as to the 250 shares referred to in the bill, it does not appear that any possible injury or damage can be done either defendant by restraining them from disposing of or transferring these shares until the rights and interests of the complainant and defendants have been adjudicated. High

on Injunctions (4th Ed.), sec. 1620; *Esperson v. Fox*, 177 Ill. App. 141.

It is earnestly urged that a court of chancery cannot interfere with the probate court in the settlement of an estate without assuming jurisdiction of its entire administration, which a court of chancery will not do except in extraordinary circumstances. We do not think it can be said upon the allegations of the bill that its purpose was to draw to the court of chancery the administration of deceased's estate. From the bill it appears that the complainant has just reason to believe that defendants would make an improper use of the power of attorney executed by him to deprive him of much of his interest in deceased's estate; that is, that they by their conduct had shown a purpose to acquire for themselves entire control of the defendant company. The writ issued merely stays the further progress of the alleged conspiracy. It does not in and of itself transfer any right or title to or from either of the parties. It does not seek to administer the deceased's estate. It may be quite true that the probate court would have ample power to compel the administrators of the estate to inventory the two shares of stock in question, but the alleged facts concerning these two shares are only incidentally involved in the general allegations, which charge an unlawful design on the part of defendants.

In the case of *Dinsmoor v. Bressler*, 164 Ill. 211, it was held that a summary proceeding could not be resorted to in the probate court to try contested rights and title to property between the executor and third persons. In the case of *Moore v. Brandenburg*, 248 Ill. 232, the Supreme Court said:

"If sections 81 and 82 could be used to settle contested rights to property as between executors and administrators on the one side and third persons on the other, they would operate as an infringement upon the constitutional right to trial by jury, as they contain no provision for a jury trial. * * * In our opinion,

whether the case made by the bill is one for the exclusive jurisdiction of a court of equity or not, it is a proper case for equitable jurisdiction, and the demurrer to the bill should have been overruled.''

The language of the Supreme Court quoted above is applicable to the present use. It seems quite clear to us that the case made by the bill is a proper case for equitable jurisdiction, and even if it can be said that the jurisdiction is not exclusive and that the probate court might, under sections 81 and 82 of the Administration Act [Cahill's Ill. St. ch. 3, ¶¶ 82, 83], afford at least part of the relief sought by the bill, this would not be sufficient to authorize a reversal of the order complained of. The bill charges that complainant is now endeavoring to have two of the defendants discharged as administrators of deceased's estate. Whether the complainant ultimately succeeds or fails in the proceeding, the final determination of the issues raised by his petition may not be determined for a considerable time. In the meantime defendants, unless restrained, might find ample opportunity to defraud complainant of his interest in the subject-matter of the present suit. The adequacy of the remedy sought by complainant in the present proceeding is clearly apparent.

The bill charges that the power of attorney was procured from complainant by fraud; that he has revoked it and he prays that it be canceled. The persons charged with the alleged fraud are administrators of deceased's estate; nevertheless, the purpose of the bill appears to be to restrain them from acting as complainant's agents. The remedy sought by the bill is much more effective than that which might be afforded the complainant in a contest in the probate court upon a final accounting to be made there some time in the future by defendants as administrators. By his bill the complainant seeks to maintain the *status quo* until the principal question of the cancellation of the power of attorney shall be determined. The main re-

lief sought under the bill is a restoration to complainant of his alleged ownership of the 250 shares and also to have the two shares of stock referred to declared assets of the deceased's estate, and the injunction sought under the bill is merely ancillary to the main relief prayed for.

In the case of *Spiller v. Ensign,* 205 Ill. App. 154, the court held that in considering the proposition of granting or dissolving a preliminary injunction, an important inquiry is the relative inconvenience to be caused the parties if on final adjudication it appears that the court should not have entered the order. *Humiston v. Dennis,* 214 Ill. App. 633. In *Forster v. Fruin & Walker Co.,* 170 Ill. App. 89, this court, speaking through Mr. Justice McSurely, said that:

"Unless it clearly appears that the court below improperly exercised its discretionary powers in issuing the injunction *pendente lite* the order should be affirmed. *New Ohio Washed Coal Co. v. Coal Belt Ry. Co.,* 116 Ill. App. 153; High on Injunctions (4th Ed.), sec. 1696; *New Music Hall Co. v. Orpheon Music Hall Co.,* 100 Ill. App. 278."

In the case of *Bixler v. Summerfield,* 195 Ill. 147, the Supreme Court said that:

"Where the board of directors of a corporation 'vote large pay to themselves, evidently in bad faith, and with a view to depriving the corporation of more than a reasonable proportion of its net earnings, a dissenting stockholder may file a bill in equity to have the amount recovered back.' (2 Cook on Corp., 4th Ed., sec. 657, and cases cited in notes.) If one family, holding the majority of the stock of a corporation, vote away the corporate profits for salaries, the minority may call upon a court of equity to remedy the fraud."

It is our opinion that we should not disturb the restraining order which preserves the *status quo.*

The order of the superior court is affirmed.

*Affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.