Lincoln Trust & Savings Bank, Appellee, v. Ernst P. Nelson et al., Defendants.
Appeal of Efthemios A. Efthemiou and Tom B. Kormas, Appellants.

Gen. No. 35,054.

Opinion filed April 15, 1931.

JOHN C. GEKAS, for appellants.

LITSINGER, HEALY & REID, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Lincoln Trust & Savings Bank filed its bill of interpleader in the circuit court of Cook county, stating that there was pending in the superior court of Cook county an action at law against it, instituted by the defendants Efthemios A. Efthemiou and Tom B. Kormas, wherein they sought to recover certain money theretofore paid to complainant; that the same fund was claimed by the other defendants, Ernst P. Nelson and Selma W. Nelson, and that it, the Lincoln Trust & Savings Bank, was a mere stakeholder, willing to deposit the money in court, and have the said claimants interplead among themselves and determine its ownership. Upon due notice to all parties in interest, who appeared by counsel, the chancellor heard complainant's motion for an injunction. Certain minor changes in the bill were suggested by the court, and on amendments being filed, an order was entered directing complainant to deposit the sum of $3,838.74, the amount involved, with the clerk of the court and restraining Efthemiou and Kormas from prosecuting their action at law in the superior court. From this order defendants Efthemiou and Kormas prayed an interlocutory appeal and filed their bond.

It is urged that the amended bill of complaint is insufficient to support the injunctional order. Briefly stated the amended bill alleges that the complainant, Lincoln Trust & Savings Bank, is a duly organized banking corporation; that about December 1, 1924, the Nelsons deposited in the bank for collection a certain instrument in writing purporting to be a real estate sales contract between Oakton East Prairie Realty Trust, of which the Chicago Title & Trust Company

was trustee, and Efthemios A. Efthemiou and Tom B. Kormas, providing for the sale by the Oakton East Prairie Realty Trust to Efthemiou and Kormas of certain real estate described in the agreement, at a purchase price of $4,500, to be paid to the Lincoln Trust & Savings Bank in instalments, with the exception of the first payment of $900, which was acknowledged by the agreement as having been paid to the manager of the trust; that pursuant to the deposit of the agreement with the bank the defendants Efthemiou and Kormas paid monthly, sums aggregating $3,470.68, which represent all the payments listed on the back of the contract, a copy of which was attached to the bill of complaint; that in addition to the foregoing amount there had been paid by Efthemiou and Kormas to the bank $368.06 for taxes and special assessments, making a total sum paid by them of $3,838.74; that on October 25, 1930, Efthemiou and Kormas demanded from the bank the return of the money thus paid, and thereafter on November 18, 1930, instituted suit in the superior court of Cook county for the recovery thereof; that by their demand in writing and by their declaration filed in said suit in the superior court, Efthemiou and Kormas made known and claimed and still insist that said written agreement was not a valid contract and that they did not receive any consideration for the payments made to the bank, and were therefore entitled to the return thereof; that the Nelsons at the time of the deposit of said written agreement with the bank, and at various times thereafter, claimed and still insist that prior to the execution of said agreement they were the owners of certain of the real estate mentioned in the written agreement, and as such, being desirous of subdividing and selling the same, adopted the trade name of Oakton East Prairie Realty Trust and employed one Edward A. Dato as agent and manager of said premises and through him entered into the

contract with Efthemiou and Kormas; that prior to the making of said agreement and for the greater protection of purchasers they had conveyed title to the premises to the Chicago Title & Trust Company, in trust, under an agreement whereby the trustee should hold title, and as the contracts were performed by the purchasers said trustee would, upon direction of the agent and manager of the trust, convey by trustee's deed the title to purchasers of the property, and providing further that when said contract with Efthemiou and Kormas was fully performed, the manager would direct the trustee to convey the premises to Efthemiou and Kormas by its trustee's deed; that all the moneys paid by Efthemiou and Kormas to the bank under the provisions of said written agreement were the property of the Nelsons and they were therefore entitled to have the complainant pay to them the sum of $3,838.74 so received from Efthemiou and Kormas, and demanded that complainant pay said sum to them.

It thus appears from the only pleading before us, that the ownership of the fund involves disputed questions of fact and doubtful propositions of law with reference to the existence, nature and effect of the trust agreement, the validity of the contract made by Efthemiou and Kormas, whether the payments thereunder were voluntarily made with knowledge of the facts and the question of privity between the Nelsons and Efthemiou and Kormas. Obviously complainant was not required to determine these questions at its peril and decide which of the defendants was entitled to the fund claimed. It, therefore, properly filed its bill which contains all the essentials of a bill of interpleader. Neither was the chancellor required to determine these doubtful questions upon consideration of the motion for a temporary injunction. In urging the numerous grounds relied upon for reversal, counsel evidently misapprehended the purpose of a tempo-

rary restraining order, for he argues the merits of the cause as if presented on a demurrer to the amended bill of complaint.

The primary purpose of a temporary injunction is to preserve the matters in *statu quo* until the court has had an opportunity to consider the cause upon its merits or upon demurrers presented and argued. An interlocutory appeal is not intended as a short cut to a court of appeal and thus to dispose of a cause upon its merits without giving the trial court an opportunity to first consider it. If defendants confidently believed the amended bill to be insufficient they should have interposed their demurrers to it, and if unsuccessful in the trial court, assumed the responsibility of their position. Should we pass upon the merits of the bill upon this interlocutory appeal, it would still afford defendants an opportunity to present demurrers without requiring them to elect as to whether they would abide by their demurrers or answer the bill.

Upon appeal from interlocutory orders the reviewing court will simply determine from the averments of the bill whether the party probably is entitled to the relief sought. The rule and the reason therefor are well stated in the case of *McDougall Co. v. Woods*, 247 Ill. App. 170, recently decided by this court, in which it was said:

"In appeals from interlocutory orders it is not our province to determine the rights of the parties in the subject matter of the litigation, but simply to determine from the averments of the bill whether the party probably is entitled to the relief sought. Where such an order is improvidently granted without notice, in a case where notice should have been given, or where the statute requires a bond as a condition precedent and none has been given, the interlocutory orders so improvidently granted will be reversed without refer-

ence to the merits of the cause. . . . The statute permitting appeals from interlocutory orders was not intended primarily to provide for a review by this court of the rulings of the trial court on demurrers or to secure from this court its judgment on demurrers before the trial court has ruled thereon. A bill, when first filed, is frequently demurrable, especially bills for injunctions which are usually hurriedly prepared, but which may be made good by proper amendments which the first court has power to allow. We have no such power. The primary purpose of the statute is to permit a review of the exercise of the discretion lodged in the chancellor with the purpose of determining whether the interlocutory order probably was necessary to maintain the *status quo* and preserve the equitable rights of the parties.'' High on Injunctions, 4th ed. sec. 1696; 32 Corpus Juris, p. 20; *Railton v. People*, 83 Ill. App. 396, and *Friedman v. Peckler,* 255 Ill. App. 199, are to same effect.

A reading of the amended bill of complaint, together with the contract attached thereto, sufficiently shows that the Nelsons on the one hand and Efthemiou and Kormas on the other, claim the same fund; that the dispute between them as to the ownership thereof arises out of the same transaction, based upon a trust deed and contract shown by the pleadings; that the complainant, a stakeholder and disinterested in the fund itself, filed its bill in good faith and that there is no collusion between it and any of the parties to this proceeding. The court had jurisdiction of the parties, who were before the court when the motion was presented, and of the subject matter of the litigation. It was sufficient for the chancellor to inquire whether the complainant was probably entitled to the relief sought. It was not incumbent upon him to pass upon doubtful questions of law and fact. Two groups of defendants were claiming the same fund. One had

already instituted suit for the recovery thereof. To have denied the temporary injunction, the chancellor would probably have subjected complainant to another suit at law and possible double liability resulting therefrom. Under the circumstances it was the court's duty to issue the injunction and thus preserve the *status quo* until the cause might be heard either upon demurrers to be filed or upon a final hearing. There is nothing to indicate that the chancellor improvidently entered the order appealed from or that he in any way improperly exercised the discretion lodged in him.

It is further contended that the injunction should not have been issued without bond. The court required complainant to deposit the amount of money involved with the clerk of the court as a condition of the issuance of the writ. The statute does not make a bond mandatory except where a judgment is enjoined. (*Skelers v. Meyer,* 246 Ill. App. 18; *Herzberger v. Barrow,* 115 Ill. App. 79.) We believe that the allegations of the amended bill of complaint stated sufficient ground for the issuance of an injunction without bond.

For the reasons stated the order appealed from will be affirmed.

*Affirmed.*

WILSON, P. J., and HEBEL, J., concur.