John T. O'Brien et al., Plaintiff-Appellant, v. Barney Matual, et al., Defendants-Appellees.

### Gen. No. 11,021.

Second District.

August 12, 1957.

Released for publication August 30, 1957.

174

176

177

Zwanzig, Thompson & Lanuti, of Ottawa, and Perona & Perona, of Spring Valley, for appellant.

McNeilly, Ryan & Olivero, of Peru, and Kevin D. Kelly, of LaSalle, for appellees.

JUSTICE CROW delivered the opinion of the court.

The plaintiff, John T. O'Brien, as Fourth Vice-President of the International Brotherhood of Teamsters, etc., hereinafter referred to, and as Trustee of Local Union No. 46, etc., hereinafter referred to, on behalf of himself and all members of the Brotherhood, filed a complaint July 27, 1956, charging certain irregularities by the defendants, Barney Matual, et al., as officers of Local Union No. 46, in part upon information and belief, some interference with contractual rights under collective bargaining agreements, various derelictions in duties, insubordination, confusion of authority, etc.; alleging he had been appointed July 17, 1956 as Temporary Trustee of Local Union No. 46, Teamsters, Chauffeurs and Helpers of Peru, Illinois, by Dave Beck, General President of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; the plaintiff had demanded possession of the books, affairs, and assets of the local union; the defendants refused to turn over the funds, books, affairs and assets thereof to the plaintiff; and in refusing to allow the plaintiff Temporary Trustee to take charge, the defendants were not

178

following the International Constitution and By-Laws. The complaint alleged the International Brotherhood is a voluntary, unincorporated association, it has a Constitution and By-Laws, a copy being attached, governing it, its officers, affiliated unions, and members; Local Union No. 46 is a voluntary unincorporated association, affiliated with the International Brotherhood; the General President had set August 6, 1956, at 10:00 a.m., at the Local Union office as the time and place for a hearing to determine whether the temporary trusteeship should forthwith terminate or continue, a copy of the papers to that effect being attached; and the plaintiff on July 24, 1956 informed the officers of Local Union No. 46 of that action and hearing. The complaint prayed for a temporary injunction against the defendants, without notice, to enjoin them from destroying, dissipating, or converting the assets of Local Union No. 46, from exercising any of the duties of officers thereof, and from transacting any business thereof, and also that the court decree that the plaintiff is entitled to take full charge of the affairs of the local union and direct the defendants to turn over all moneys, books, and assets thereof to the plaintiff and account to the plaintiff. It appears from the allegations of the defendants' affirmative defenses and counterclaim that a temporary injunction was issued the same date, July 27, 1956, pursuant to the prayer of the complaint, without notice, but was subsequently dissolved, apparently some time before September 1, 1956 and after August 6, 1956, on motion of the defendants. The plaintiff apparently took no appeal from that interlocutory order of dissolution of that temporary injunction and that matter is not before us.

After the dissolution of that temporary injunction, some of the defendants individually and as officers of Local Union No. 46 filed a verified answer, and cer-

179

tain affirmative defenses, in substance denying the plaintiff is entitled to the relief sought in the complaint, and also a counterclaim in three counts.

The answer, so far as it need be noted at this time, in substance, admits the allegations as to the status of the International Brotherhood, its Constitution and By-Laws, the nature of the plaintiff, the status of Local Union No. 46, the capacities (so far as material) of the defendants officers of the Local Union; denies the General President appointed the plaintiff as temporary trustee of the local union, denies he acted pursuant to the Constitution; admits the General President set Monday, August 6, 1956, at 10:00 a.m., at the local union office for a hearing to determine whether a temporary trustee shall forthwith terminate or continue, and admits notification July 24, 1956 that a trusteeship was being imposed; denies the plaintiff is the duly authorized trustee of the local union; admits their refusal to turn over the moneys, books and property of the local union to the plaintiff; admits the local union has certain properties which are in the defendants' custody or control; and denies the allegations of certain irregularities, etc., the necessity for any temporary injunction, that upon the plaintiff's appointment as temporary trustee the property of the local union became the property of the International Brotherhood, and that the plaintiff has no adequate remedy at law.

The affirmative defenses, so far as they need be noted at this time, are, in substance, that Article 6, Section 6 (a) of the Constitution provides for a temporary trustee, his duties and powers, termination, and continuation thereof; Section 6 (b), (c), (d) and (e) thereof provide for a permanent trustee etc.; the complaint confuses a temporary trustee and a permanent trustee; the General President attempted without authority to designate and empower the plaintiff as

180

trustee, to exercise complete dominion over the plaintiff and the duration of his powers, to withhold some powers, and to arbitrarily take control of the affairs of the local union; no hearing was commenced August 6, 1956, at 10:00 a.m., at the local union office under Article 6, Section 6 (a); on August 6, 1956 at 10:30 a.m., a hearing was held purportedly under Article 6, Section 6 (a), but not at the time or place set by the General President; on August 1, 1956, the defendant Barney Matual received a telegram notifying him of a hearing at the Hotel Peru, 10:30 a.m., August 6, 1956, which was sent less than 10 days prior to such hearing, and which was signed by the General President and sent from Washington, although he was not then in Washington, when the telegram was received the defendant Matual, president of the Local Union, was bound by the temporary injunction of July 27, 1956 issued upon the plaintiff's complaint, and prevented from calling a meeting of the members and informing them thereof, from attending the hearing, and from defending against any charges; no notice has been received of the outcome of any hearing or whether the temporary trustee shall terminate or continue; the plaintiff does not come into equity with clean hands; the plaintiff has not been duly appointed trustee of the local union, and the alleged temporary trusteeship has expired for failure to comply with the Constitution.

Count I of the counterclaim is for a temporary injunction, by the defendants Barney Matual and some others as officers of Local Union No. 46, etc., affiliated with the International Brotherhood of Teamsters, etc., as representatives of the members of the local union, and on behalf of all members of the brotherhood, against the plaintiff John T. O'Brien as Fourth Vice-President, etc., on behalf of himself and all members of the Brotherhood, seeking to enjoin him from

181

interfering with the authority or business of or transacting business on behalf of the local union, or holding himself out as a duly constituted representative of the members thereof, or interfering with the defendants in conducting the affairs of the local union, or interfering with the employment of the members thereof, until a final determination of the case and of the rights of the plaintiff and defendants. This count is based on certain alleged action by the plaintiff after the original complaint, and, particularly, after the dissolution of the prior temporary injunction issued pursuant to the complaint, and which allegedly tends to destroy the status quo before the rights of the parties can be determined. The other counts are for damages and are not now material.

Notice of the defendants-counterclaimants' motion for temporary injunction as prayed in count I of the counterclaim was given and a hearing was held October 17, 1956, after which a temporary injunction was issued that date. This is an appeal by the plaintiff from that interlocutory order for temporary injunction.

It appears from the stipulation of counsel for all the parties entered into in the Trial Court that: (1) no evidence was presented by anyone on the motion of the defendants-counterclaimants for the temporary injunction; (2) the court granted the motion of the defendants-counterclaimants for the temporary injunction based upon the then pleadings only; and (3) the court said, in considering the motion for temporary injunction, that for the purpose of this hearing the only thing before the court was count I of the counterclaim.

The temporary injunction so issued restrains John T. O'Brien as Fourth Vice-President of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and all members

of the International Brotherhood and all servants, agents and employees of the plaintiff from:

(a) Transacting any business or attempting to transact any business of any nature on behalf of or interfering with the defendants in conducting the affairs of Local Union No. 46, Teamsters, Chauffeurs and Helpers of Peru, Illinois, until a final determination of this case.

(b) Collecting any dues or attempting to collect any dues from any member of said Local Union No. 46 until final determination of this action.

(c) Contacting any employees or attempting to negotiate with any employers on behalf of any employees who were members of Local Union No. 46 on the date the complaint herein was filed until a final determination of this case.

(d) In any way attempting to influence or coerce any individual who was a member of Local Union No. 46 and join any other body or local union purporting to represent employees, until a final determination of this case.

(e) In any way interfering with the right of any individual who was a member of Local Union No. 46 on the date the complaint herein was filed, to continue in his employment with his employer and from interfering in any manner with the employment of any of said individuals, until a final determination of this action.

Count I of the counterclaim, in substance, alleges that: by the terms of the temporary injunction issued pursuant to the complaint, the plaintiff John T. O'Brien attempted to take over the affairs, business, and assets of Local Union No. 46 under the guise that he had been appointed Temporary Trustee by the General President of the International Brotherhood; the General President did not lawfully appoint the plaintiff Temporary Trustee, and did not abide by

183

the provisions of the Constitution of the International Brotherhood; at the time the General President attempted to appoint the plaintiff as Temporary Trustee, the General President, pursuant to the provisions of Article 6, Section 6a of the Constitution, set the date of August 6, 1956, at 10:00 o'clock a.m., for a hearing to determine whether the temporary trusteeship should continue or forthwith terminate, and designated the place of the hearing as the office of Local Union No. 46, 1605 Fourth Street, Peru, Illinois; no such hearing was commenced or held at that time or place and the defendants did not receive at least 10 days notice of any other time or place for such hearing; although the time set in the Constitution for the General President to notify the local union, following such a hearing, of his decision has expired, the local union has received no notice from the General President that the trusteeship was to continue; by virtue of such failure on the part of the International Brotherhood to hold such a hearing as to whether the temporary trusteeship should terminate or continue within thirty days after the attempted appointment of the plaintiff as such Temporary Trustee, and the failure of the General President to notify the local union of his decision, the temporary trusteeship automatically terminated.

Paragraphs 6 to 15 allege specific acts of the plaintiff after the filing of the complaint, July 27, 1956, and particularly after the dissolution of the temporary injunction issued pursuant to the complaint, that allegedly tended to destroy the status quo that existed July 27, 1956 when the plaintiff instituted the suit, it being alleged the plaintiff had attempted to take the law into his own hands and, by coercion, threats, and promises, to take over the affairs of the local union. There are specific allegations that the plaintiff, through purported agents, has contacted employers

184

and demanded that all business concerning the employees be transacted through the plaintiff and not through the local union; has demanded that the members of the local union pay their dues to the plaintiff and not to the local union; has threatened that unless the dues are so paid their union cards would not be recognized by the International Brotherhood and they would be deprived of employment; and has by letter told the members of the local union not to transact any union business with anyone else except the plaintiff's office. Other allegations are that the plaintiff through his agents has demanded of employers having contracts with the local union requiring the withholding of union dues from wages under the checkoff system that the dues so withheld be forwarded the plaintiff and not to the officers of the local union; confusion exists in the area as to whether the plaintiff or the local union is the legal representative of the International Brotherhood and the employees; the defendants have never received any official notice of revocation of the charter of the local union; certain employers have, because of the circumstances, refused to negotiate or contract with any group purporting to represent the International Brotherhood; and the plaintiff through his agents has threatened the some 200 over-the-road drivers who are members of the local union, and the over-the-road employers, that unless such employees pay the union dues to the plaintiff and obtain a membership card from the plaintiff they will not be permitted by other local unions to drive vehicles in the territory over which other locals have jurisdiction. There are allegations that the unique nature of the status of the local union is being irreparably damaged by loss of members, by the confusion among employers as to with whom they should deal, the loss of prestige, and the loss of dues, that the status of the International Brotherhood in the area is

185

being irreparably damaged, the gains to be made by members of the union in working conditions in the area are being irreparably damaged, and that because of the unique relationship or status of the local union there is no adequate remedy at law.

So far as appears from the pleadings, Local Union No. 46 has operated since April, 1955 as an affiliate of the International Brotherhood, had at the time the complaint was filed, on July 27, 1956, more than 700 members, and the defendants officers, on behalf of the Local Union and its members, were lawfully in control and had custody at that time of the affairs and assets of the local union.

The plaintiff says that count I of the counterclaim does not state a cause of action, there are insufficient positive, certain averments of substantial ultimate fact, the allegations are mere conclusions and opinions of the pleader, and are entirely general.

■ ■ The primary purpose of Section 78 of the Civil Practice Act (Ch. 110, Ill. Rev. Stats. 1955, Par. 78), relating to appeals to the Appellate Court from interlocutory orders concerning injunctions, is to permit a review of the exercise of the discretion lodged in the chancellor in order to determine whether the interlocutory order probably was necessary to maintain the status quo and preserve the equitable rights of the parties; and unless the Appellate Court finds that the chancellor's discretion has been abused the interlocutory order will not be reversed or set aside: McDougall Co. v. Woods (1928) 247 Ill. App. 170; Bernard Brothers, Inc. v. Deibler (1945) 326 Ill. App. 538; Baldassano v. Accettura (1949) 336 Ill. App. 445; Gillam v. 661 Sheridan Apts., Inc. (1953) 1 Ill.App.2d 11; Arends v. Naughton (1956) 11 Ill.App.2d 227.

■ The primary purpose of a temporary injunction is to preserve matters in status quo until the court has had an opportunity to consider the cause

186

upon its merits, or upon a motion to dismiss, i.e., to prevent such acts during the pendency of the action as would preclude the court from giving the plaintiff or counterclaimant his remedy at the end of the litigation if he be entitled to such. Any other conclusion would place a premium upon seizing and establishing possession in fact by force rather than by seeking to alter the status in an orderly way by legal procedure. The status quo which should be preserved by a temporary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy, and the necessity of the temporary injunction should be made apparent by appropriate allegations showing that a change in the status would cause irreparable injury: Lincoln Trust & Savings Bank v. Nelson (1931) 261 Ill. App. 370; Gillam v. 661 Sheridan Apts., Inc., supra; Kabureck v. Stookey (1954) 1 Ill.App.2d 181; Nestor Johnson Mfg. Co. v. Goldblatt (1939) 371 Ill. 570; Arends v. Naughton, supra; Scholz v. Barbee (1951) 344 Ill. App. 630.

The granting or refusing of a temporary injunction rests largely in the discretion of the chancellor to whom the application is made; the showing by the pleadings (and evidence, if there be such) which must be made to obtain a temporary injunction or to resist a motion to dissolve such is less than what must be made to obtain a final and permanent injunction on the merits; a temporary injunction should not be refused or dissolved merely because the court may not be absolutely certain the plaintiff or counterclaimant has the right he claims; the disposition of an application for a temporary injunction does not, of course, preclude in any way an inquiry into the sufficiency of the complaint or counterclaim upon a motion to dismiss, or determine the case on the merits at all; the plaintiff or counterclaimant, however, is not required upon such an application to make out a case which

187

would entitle him, at all events, to relief at the final hearing; he need only prima facie show for this purpose that he raises a fair question as to the existence of the right he claims, present circumstances which lead to a belief that he probably will be entitled to relief, if the proof sustains his allegations, and satisfy the court that matters should be preserved in their present state and status quo until the cause can be disposed of on its merits; one important consideration upon an application for a temporary injunction is the relative inconvenience to be caused the respective parties if the application be allowed or denied: McDougall Co. v. Woods, supra; Schuler v. Wolf (1939) 372 Ill. 386; Lincoln Trust & Savings Bank v. Nelson, supra; Bernard Bros. Inc. v. Deibler, supra; Kabureck v. Stookey, supra; Nestor Johnson Mfg. Co. v. Goldblatt, supra; Baird v. Community High School District (1922) 304 Ill. 526; Arends v. Naughton, supra; Scholz v. Barbee, supra; Ebann v. Brown (1908) 139 Ill. App. 213; Italiana v. Papa (1916) 199 Ill. App. 401; Loftis v. Loftis (1922) 225 Ill. App. 478.

We believe there are sufficient positive, certain averments of substantial ultimate fact in count I of the counterclaim to support the temporary injunction, notwithstanding and disregarding the presence of some allegations of conclusions, opinions, and generalities. None of the allegations are upon information and belief. All are stated in a positive, affirmative manner. It would seem unnecessary, and improper pleading, for example, for the defendants-counterclaimants to cite specific instances and name particular companies or persons in those parts of the allegations relating to the plaintiff having contacted employers and demanded that all business concerning employees be transacted through the plaintiff and not the local union,—as the plaintiff urges,—or to name those who at various points allegedly purportedly acted as the

188

plaintiff's agents. Evidence may not, need not, and should not be pleaded; ultimate facts may be, and should be, pleaded, notwithstanding they to an extent may represent conclusions drawn from intermediate and evidential facts: Carlton v. Smith (1936) 285 Ill. App. 380; Crane v. Schaefer (1908) 140 Ill. App. 647. The allegations, so far as material, of count I are not inconsistent with the general principles of equity pleading applicable in injunction cases stated in the authorities cited by the plaintiff: People Gas Light & Coke Co. v. Cook Lumber Terminal Co. (1930) 256 Ill. App. 357; Hope v. Hope (1953) 350 Ill. App. 190; Stengel v. Yates (1951) 342 Ill. App. 435; Jackie Cab Co. v. Chicago Park District (1937) 366 Ill. 474. Johnson v. Johnson (1955) 5 Ill.App.2d 453, also referred to by the plaintiff, is a partition case, not an injunction case, and seems to have no bearing on the case at bar. Nor do we perceive any necessary inconsistency between the allegations of irreparable damage and inadequate remedy at law in count I of the counterclaim and the allegations of count II thereof which is at law for damages but is against not only the plaintiff but also Dave Beck, General President, and contains many additional allegations not in count I, and rests upon different and additional theories, and may or may not be legally sufficient if and whenever tested by a motion to dismiss.

The last, actual, peaceable, uncontested status which preceded the pending controversy, as of and immediately prior to July 27, 1956, was, as appears from the allegations of the pleadings and the reasonable inferences to be drawn therefrom, that Local Union No. 46 was an unincorporated association, an active, going, operating local labor union; was and had been for some time an affiliate of the International Brotherhood; had more than 700 members, who paid union dues to it either directly or indirectly through em-

189

ployers under contractual dues checkoff systems, which members had union cards recognized by the International Brotherhood and other affiliated local unions; it had books, moneys, funds, assets, and properties; the defendants officers thereof were then lawfully in control and had custody of the same and the local union's affairs on behalf of it and its members; the defendants were acting as such officers and transacting any business of the local union with its members and with employers who employed its members; some employers of its members had contracts with the local union requiring the withholding of union dues from wages under a checkoff system and the forwarding thereof to the local union; the plaintiff had been purportedly appointed July 17, 1956 as Temporary Trustee of the local union by the General President of the International Brotherhood; the General President had set August 6, 1956, at 10:00 a.m., at the local union office for a hearing to determine whether the temporary trusteeship should forthwith terminate or continue; the plaintiff had on July 24, 1956, informed the defendants officers of the local union of that action and hearing; and the plaintiff had not yet obtained possession of the books, moneys, funds, assets, and properties of the local union. That is the status quo for the preservation of which or portions of which a temporary injunction might, under proper circumstances, be considered.

The alleged acts of the plaintiff after July 27, 1956 and particularly after the dissolution of the temporary injunction issued pursuant to the complaint allegedly tending to change, injure, or destroy that status quo and cause irreparable injury are, as appears from the allegations of the pleadings and the reasonable inferences to be drawn therefrom, that,— notwithstanding it is denied that the General President of the International Brotherhood legally appointed the

190

plaintiff as Temporary Trustee of the local union, that no hearing was held, as set by the General President, August 6, 1956, at 10:00 a.m., at the local union office to determine whether a temporary trustee should forthwith terminate or continue, that no 10 days notice was ever given the defendants or local union of another hearing which was held at a different time and place than originally so set by the General President, that at the time of such other hearing the defendants were enjoined by the temporary injunction of July 27, 1956 from calling a meeting of the members of the local union and informing them thereof, from attending such other hearing, from defending against any charges, from exercising any of the duties of officers of the local union, and from transacting any business thereof, that the defendants and the local union have never received any notice or advice from the General President of the outcome of any hearing or his decision whether a temporary trustee shall forthwith terminate or continue, notwithstanding the denial of alleged irregularities etc. in the defendants' conduct of the local union's affairs, and notwithstanding the dissolution of the temporary injunction of July 27, 1956 which had enjoined the defendants from exercising any of the duties of officers of the local union and from transacting any business of it,—notwithstanding those matters,—the plaintiff has contacted employers and demanded that all business concerning employees be transacted through the plaintiff and not the local union, has demanded that the members pay dues to the plaintiff and not the local union, has threatened that unless so paid their union cards will not be recognized by the International Brotherhood and they'll be deprived of employment, has told the members not to transact union business with anyone except the plaintiff's office, has demanded of employers having contracts with the local union requiring

191

the withholding of union dues that the dues withheld be forwarded the plaintiff and not the officers of the local union, and has threatened the over-the-road driver members and their employers that unless union dues are paid the plaintiff and cards obtained from him they will not be permitted by other local unions to drive in territories over which the other locals have jurisdiction.

Injury to property, whether actual or prospective, is the foundation upon which the jurisdiction of equity rests: People v. McWeeney (1913) 259 Ill. 161; and there are a number of legal rights in which there is a property interest but which, because of their personal and peculiar character, could not be transferred, but as to which equity will interfere to protect against deprivation of enjoyment: Weaver v. Fisher (1884) 110 Ill. 146. The union dues of the members of this local union would be property and, so far as now appears, would be the property of the local union, not the plaintiff. The contracts of the local union with various employers would be property, or in the nature of property, of the local union, apparently, or its members, and not of the plaintiff. The right to conduct a lawful business is a property right which equity may protect from improper and unlawful interference: Linehan v. City of Chicago (1922) 227 Ill. App. 255; International News Service v. Associated Press (1918) 248 U. S. 215, 63 L. Ed. 211. No reason is readily apparent why the right to conduct a lawful local labor union is not in the same category or why the lawful officers thereof may not for themselves, the members, and the local union seek equitable relief against an allegedly improper and unlawful interference with such right and their conduct of the local union as long as they still are officers and pending any determination to the contrary. The right to earn a livelihood and to continue in employment unmolested

192

by any illegal or unjustified molestation or interference of third persons is similarly entitled to equity's protection in the absence of an adequate remedy at law, even though the employment be at the will of the employer and/or employee and not for any definite term,—it is nevertheless not at the will of third persons: Truax v. Raich (1915) 239 U. S. 33, 60 L. Ed. 131.

Unless the plaintiff be properly and legally the Temporary Trustee of this local union,—which is a question on the merits still pending and undetermined,—he has no apparent status, right, authority, or position in the meantime to transact union business concerning the employees, to collect dues, to threaten non-recognition of their union cards, or to try to deprive employees of employment.

Article 6, "Power of General President to appoint Trustees and Duties and Obligations of Locals under Trusteeship" of the Constitution of the International Brotherhood, as abstracted, as attached to Complaint, provides, in part:

"Sec. 6. (a). If the General President has or receives information which leads him to believe that any of the officers of a local union or other subordinate body, are dishonest or incompetent, or that such organizations are not being conducted in accordance with the Constitution and laws of the International Brotherhood or for the benefit of the membership, or are being conducted in such a manner as to jeopardize the interests of the International Brotherhood, he may appoint a temporary Trustee to take charge and control of the affairs of such local union or other subordinate body; provided, however, that upon the appointment of such temporary Trustee the General President shall set a time and place for a hearing for the purpose of determining whether such temporary trusteeship shall forthwith terminate or continue,

193

which hearing shall commence within thirty days after the appointment of such temporary Trustee. Adequate notice, at least ten days prior to the date of hearing, shall be given to the local union or other subordinate body involved. In the case of all hearings conducted pursuant to or after the establishment of a trusteeship, the General President shall have power to deputize a representative to act for him in such matter. Such representative shall make his recommendations to the General President, orally or in writing within ten days after the completion of the hearing, and the decision in the case shall be made by the General President himself, which decision shall be made within ten days after such recommendations are received by him and such decision shall be promptly transmitted to the local union or other subordinate body. . . ."

Article 6 goes on to provide, inter alia, "(b) The Trustee shall be authorized and empowered to take full charge of the affairs of the local union or other subordinate body," etc.; "(c) The suspended officers shall turn over all moneys, books and property of the local union or other subordinate body to the Trustee, who must receipt for the same;"—"(d) Temporary officers and trustees must be members in good standing of local unions in good standing." etc.; "(e) The Trustee shall take possession of all the funds, books, papers and other property of the local union or other subordinate body and tender a receipt for same." etc. Although neither the plaintiff or defendants have in their briefs given us any particular analysis of those subparagraphs (b), (c), (d) and (e) of that Article 6, or any authorities construing the same, it would seem at this time that they do not relate to the "temporary trustee" referred to in subparagraph (a), but rather to what may be considered as a permanent Trustee in those instances where, after the "hearing for the pur-

194

pose of determining whether such temporary trusteeship shall forthwith terminate or continue", as provided in subparagraph (a), pursuant to adequate notice to the local union, and after the recommendations of the representative, if any, deputized to act for the General President at such hearing, the General President has decided that such temporary trusteeship shall continue, if he so decides, and that decision has been promptly transmitted to the local union. Hence, under the allegations of the present pleadings, at this state, it does not seem that subparagraphs (b) to (e) are presently relevant.

It appears also from other exhibits attached to the complaint that the General President of the International Brotherhood on July 17, 1956, addressed a communication "To whom it may concern," reading as follows:

"In accordance with the powers vested in me by the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, I have today appointed John T. O'Brien as Trustee over the affairs of Local Union No. 46, Teamsters, Chauffeurs and Helpers, Peru, Illinois.

"He will have charge of the affairs of the Local Union and will continue to handle same until he is relieved of this responsibility by me.

"In the performance of his duties he will be governed by the provisions of the Constitution of the International Union."

The General President is also alleged to have addressed a communication to John T. O'Brien, the present plaintiff, on July 17, 1956, reading in part as follows:

"You are herewith appointed Temporary Trustee over the affairs of Local Union No. 46, Teamsters, Chauffeurs and Helpers, Peru, Illinois.

195

"You are appointed with the power, authority and duties set forth in the Constitution, Article VI, Section 6, Subsections (2) to (4) inclusive. Take notice of such powers and duties as are expressed in the Constitution and act in accordance therewith. Your appointment will continue until revoked by me, or one authorized to act in my behalf.

"In addition, I have scheduled a hearing to be held at 10:00 A.M., Monday, August 6, 1956, in the offices of the Local Union, 1605 Fourth St., Peru, Illinois, for the purpose of determining whether such temporary trusteeship shall continue or terminate forthwith.

. . . . . .

"Also enclosed is the letter to be sent to the Local Union advising them of your appointment as Temporary Trustee.

"I ask that from time to time you advise this office the progress made in this Local Union.

"In appointing you Temporary Trustee for Local Union No. 46 this action is taken under the International Constitution to conserve the interests of the Local and of its members until such time as the trusteeship may be lifted and the Local Union returned to its regular status, or until a reorganization is effected, as provided for in the Constitution.

. . . . . .

"These instructions are to guide and govern you in connection with any and all matters and transactions during your period of trusteeship."

The General President is also alleged to have addressed a communication to the Secretary-Treasurer of this local union on July 17, 1956, reading as follows:

"This is to notify you that I have today appointed John T. O'Brien as Temporary Trustee over the af-

fairs of Local Union No. 46, Teamsters, Chauffeurs and Helpers, Peru, Illinois.

"I have set 10:00 a.m., Monday, August 6, 1956, as the time, and the office of the Local Union, 1605—4th Street, Peru, Illinois, as the place of hearing to determine whether such temporary trusteeship shall forthwith terminate or continue.

"Mr. O'Brien will take charge of the affairs of the Local Union as soon as transfer of the funds, books and other property of the Local Union can be effected and I trust the officers and members of the Local Union will co-operate in every way with the Trustee appointed."

 The defendants as members, and officers of the Local Union, the other members thereof, and the Local Union itself, have necessarily agreed, expressly or by implication, to abide by the Constitution of the International Brotherhood, and are bound thereby. They are subject to its burdens and requirements, and they are also entitled to its benefits: Bostedo v. Chicago Board of Trade (1907) 227 Ill. 90; People ex rel. Rice v. Board of Trade (1875) 80 Ill. 134. But, so also are the General President, the plaintiff here, the deputized representative, if any, of the General President and the other members of the brotherhood bound by that Constitution. Ordinarily, unless some special ground for equitable intervention be alleged, a court of equity will not interfere to control the enforcement of the constitution of such a voluntary association as to discipline, policy, or doctrine, or prevent it from proceeding in accordance therewith for some alleged violation thereof: Engel v. Walsh (1913) 258 Ill. 98; People ex rel. Keefe v. Women's Catholic Order of Foresters (1896) 162 Ill. 78. But a court of equity will interfere where it appears the provisions of the Constitution have not been observed, where the association, its officers, or tribunals are not acting within

the scope of its or their powers or in accordance with the Constitution, or the member or subordinate body has not been afforded those rudimentary rights which will give him or it an opportunity to defend against any charges made, including reasonable notice thereof, an opportunity to be present at a hearing, to confront and cross examine his or its accusers, to make a defense, and to endeavor to refute any evidence adduced in support of the charges. Further, where the controversy concerns money or property rights or demands, as distinguished from matters of discipline, policy, or doctrine, the right to resort in a proper case to a court of equity will not be abridged by provisions of the organization's Constitution, and particularly in such cases a court of equity may so far inquire into, review, and supervise the action of the association, its officers, or tribunals as to determine whether they have proceeded in accordance with the Constitution and if they have failed in some substantial manner, it may correct any abuses which may result from such unwarranted procedure: Ryan v. Cudahy (1895) 157 Ill. 108; People ex rel. Keefe v. Women's Catholic Order of Foresters, supra; Werner v. International Association of Machinists (1956) 11 Ill.App.2d 258.

The General President, for the purpose here involved, may be regarded as a quasi-judicial tribunal of limited jurisdiction, is bound to proceed in conformity with the Constitution, and if that officer has failed to act in accordance with the Constitution the defendants, the local union, and its other members ought not to be bound by that officer's acts: Ryan v. Cudahy, supra.

Without at this preliminary stage attempting to express any definitive views, these at least prima facie observations may be made so far as appears from the

198

allegations of the pleadings to date and the reasonable inferences to be drawn therefrom:

■ The General President had authority to appoint a temporary trustee to take charge and control of the affairs of this local union *if,* but only *if,* he "has or receives information which leads him to believe that any of the officers of a local union . . . are dishonest or incompetent, or that such organizations are not being conducted in accordance with the Constitution and laws of the International Brotherhood or for the benefit of the membership, or are being conducted in such a manner as to jeopardize the interests of the International Brotherhood." The General President's having or receiving information which leads him to believe that one of the indicated ultimate fact circumstances exist is a condition precedent to his having and exercising his authority to appoint a temporary trustee. We perceive nothing,—not even a formal recital,—in any of the General President's various alleged communications of July 17, 1956, copies of which are attached to the complaint, and which we have set out, to the effect he has or has received information which leads him to believe that one of such indicated ultimate fact circumstances exist, nor is there even an allegation in the complaint that the General President had or had received information which leads him to believe that one of such circumstances existed. In a matter as important, serious, and fraught with as much possibility of controversy as this is it would seem a reasonable construction of the Constitution that it means there should be some official record of some kind, available alike to the officers of a local union as to the General President, indicating at least, that the General President had or had received information which leads him to believe that one of such circumstances existed. By analogy to various statutory and other requirements relating to

199

administrative bodies, and courts too upon occasion, that in certain instances they make findings of fact, there ought to be, and we think the Constitution means there shall be, an official record of some kind indicating at least the General President's findings as to having or receiving such information as to such ultimate fact. And such record ought to be specific enough to enable a court to review intelligently the actions of the General President and ascertain if the alleged ultimate fact on which he bases his appointment of a temporary trustee is an authorized basis or not. That, at least, would seem to be a minimum essential. Beyond that, whether there need be and the Constitution means there shall be an official record of the detailed evidentiary facts tending or not tending to support the ultimate fact so found by the General President, and whether a court may inquire into such evidentiary facts to see if the General President's findings on ultimate facts are or are not substantially supported by the evidence,—as is the case normally with such administrative bodies, and courts too, under similar statutory requirements,—are other questions that need not necessarily now be determined but which may be presented and on which we express no view. See: Chicago Rys. Co. v. Commerce Comm. (1929) 336 Ill. 51; Lindburg v. Zoning Bd. (1956) 8 Ill.2d 254.

Upon the appointment of such Temporary Trustee the General President must set a time and place for a hearing to determine whether the temporary trusteeship shall forthwith terminate or continue, the hearing to commence within 30 days after the appointment, and adequate notice, at least 10 days, to be given the local union. Apparently the plaintiff was purportedly appointed Temporary Trustee July 17, 1956, the General President set August 6, 1956, at 10:00 a.m., at the local union office, for such hearing, and adequate notice, in the first instance, was given the local union.

But evidently no such hearing was in fact held at that time and place so originally set, a hearing was held at another time and place of which the local union did not have 10 days notice, and at the time set for the original hearing as well as at the time set for that other hearing the defendants officers were enjoined by the temporary injunction of July 27, 1956 issued without notice upon the complaint from exercising any duties as officers, transacting any business of the local union, calling a meeting of the members and informing them, attending the hearing, and defending against any charges. If those be the facts then the defendants and the local union have not been afforded those rudimentary rights which would have given them an opportunity to defend against any charges made,—there has been no legal hearing, there has been no legal notice, they have been turned away without a hearing,—and a proceeding of that character cannot be sustained. Ryan v. Cudahy, supra. Assuming the appointment of the temporary trustee to have been proper and legal in the first instance,—as to which there is doubt, for the reasons heretofore indicated,—the temporary trusteeship necessarily terminated at some point for failure to have the hearing pursuant to notice so required by the Constitution. It is perhaps immaterial to determine at what particular point it terminated,— it at least was terminated October 17, 1956 when the present temporary injunction was issued, if not prior thereto in August, 1956 sometime when the plaintiff's temporary injunction of July 27, 1956 issued on the complaint was dissolved, or at some other intermediate time.

It does not appear that the General President either purported personally to conduct such hearing as there may have been, in absentia the defendants and local union, or deputized a representative to act for him, or that if by a representative that such representative

201

ever made any recommendations to the General President, or what they were, after completion thereof, or that the General President himself then ever made any decision, or what it was, or if he did such decision was ever transmitted to the local union.

Under the circumstances, for the present purpose, upon the pleadings before the trial court and us, and because of the unique nature, status, and functions of this local labor union, there would seem to be no adequate remedy at law and the plaintiff's alleged acts done or threatened relative to changes in the status quo would apparently cause irreparable injury. A different conclusion would seem to place a premium upon the plaintiff's attempting to seize and establish possession of the local union affairs in fact by force rather than seeking to alter the status in an orderly way by legal procedure. Balancing the inconveniences to the parties to be caused by the allowance or denial of this application for temporary injunction there would appear to be less inconvenience to the plaintiff by its allowance than to the defendants by its denial. The defendants have prima facie shown for this present purpose that they raise a fair question as to the existence of the rights they claim, have presented circumstances which lead to a belief they probably will be entitled to relief, if the proof sustains their allegations, and have satisfied the court that matters should be preserved in their present state and status quo until the cause can be disposed of on its merits. We cannot say the discretion lodged in the chancellor has been abused. The interlocutory order probably was necessary to maintain the status quo and preserve the equitable rights of the parties. This does not at all preclude inquiry into the sufficiency of the counterclaim upon a motion to dismiss, if the plaintiff be so advised, and, of course, is not a determination of the case on the merits in any way.

The plaintiff says that it was error to issue the temporary injunction without opportunity to the plaintiff to appear in court by counsel to oppose the issuance and an opportunity by answer to the counterclaim to deny the charges and offer evidence. We see no merit in this. The defendants' answer, affirmative defenses, and counterclaim were filed October 10, 1956. There was a notice of the hearing on the defendants' motion for temporary injunction, and there was a hearing October 17, 1956 at which the parties were all present by counsel. Considering the urgent character of the matter and the plaintiff's familiarity with the facts, there was sufficient time from October 10–17 for the plaintiff to plead by answer to the counterclaim or at least to count I. All parties have stipulated, as hereinbefore referred to, as to what happened at the hearing and the record is bare of any motion made by the plaintiff for a continuance, or for leave to plead to the counterclaim within any particular limited time, or any offer of evidence by the plaintiff, or any refusal by the court to hear any such offer of evidence. The plaintiff states that the court refused to hear any evidence on the Motion for temporary injunction based on count I, and would not grant the plaintiff time to file an answer. Those contentions are simply not borne out by the record. There is nothing in the record to indicate that the plaintiff was not allowed to introduce evidence to rebut anything the defendants offered, and hence Brandt v. International Brotherhood (1940) 304 Ill. App. 578, referred to by the plaintiff, has no application. No answer to the counterclaim being on file October 17, 1956, no reasonable request for any reasonable time to plead having been made, and there being no offer of any evidence by the plaintiff, Kleinschmidt v. Kleinschmidt (1951) 343 Ill. App. 539, also cited, has no application either.

■ The plaintiff also urges that before count I can even be considered, all remedies provided the defendants under the International Brotherhood Constitution must be exhausted, and there are no allegations to the effect they have been so exhausted, and the court should therefore not interfere with internal association matters.

Article 6 (a) of the Constitution does provide—"Appeals from determinations (decisions of the General President) following such hearings (hearings to determine whether a temporary trusteeship shall forthwith terminate or continue) may be taken directly to the General Executive Board. Appeals from decisions of the General Executive Board may be taken to the convention by the local union . . . ." So far as presently appears there has never been any "determination," i.e., decision by the General President, following such hearing,—there has never been any such legal "hearing," and hence there is nothing from which an appeal could be taken thereunder. Also, what we've already said as to the power of a court of equity to interfere in the enforcement of the constitution of such a voluntary association is applicable to this point and need not be reiterated.

Article 6 (e) also provides—"When the Trustee recommends self government be restored, or when the local union . . . petitions for such restoration . . . and such restoration is approved and ordered by the General President . . . the Trustee shall return all funds . . . ." As we have said, at this stage of the cause it does not seem that subparagraph (e) is presently relevant because it (and (b) to (d)) appear to relate not to a temporary trustee but to a permanent trustee and to the situation after the General President has decided that a temporary trusteeship shall continue,—a point which this matter evidently never reached.

We believe the chancellor was correct in issuing the temporary injunction order under count I of the counterclaim, and it is, therefore, affirmed.

Affirmed.

DOVE, P. J., concurs.